Johnson, J.,
dissenting: I disagree with the majority on two of the instruction issues. First, the district courts additions to the Pattern Instructions of Kansas (PIK) defining “premeditation” were contradictory and misleading. Second, an instruction on the lesser included offense of voluntary manslaughter was factually appropriate in tiiis case and it was error for the trial court to refuse the defendant’s request to give it. Moreover, I would not find the errors to be harmless, especially under the appellant’s cumulative error claim.

Premeditation

My premeditation complaint in this case will principally focus on the language employed to define the term for the juiy. But that does not mean that I have abandoned my previously expressed view of this court’s temporal treatment of premeditation, to-wit:
“First, notwithstanding its majority view status in this State, I continue to reject the notion that a person can premeditate a murder while committing the murder. In my view, concurrent premeditation is an oxymoronic concept that obliterates the distinguishing feature of first-degree premeditated murder. See State v. Appleby, 289 Kan. 1017, 1074-75, 221 P.3d 525 (2009) (Johnson, J., concurring in part and dissenting in part) (premeditation contemplates that the matter be thought over before commencement of homicidal conduct); State v. Warledo, 286 Kan. 927, 956, 190 P.3d 937 (2008) (Johnson, J., concurring) (premeditation re *484 quires having thought the matter over beforehand; ‘beforehand’ must mean prior to commencing the death-causing act).” State v. Marks, 297 Kan. 131, 151, 298 P.3d 1102 (2013) (Johnson, J., dissenting).
Here, the homicidal act entailed Bernhardt pulling Kostner from the car and onto the ground, kicking her from the waist to her head some 20 to 30 times, inflicting 6 distinct blows to the front of her head, and causing her death from multiple blunt force injuries. The majority's stated iteration of premeditation in this case is that it can “form during or after an initial altercation.” (Emphasis added.) 304 Kan. at 472. In other words, the majority would permit the State to prove the premeditation element of the first-degree murder charge by proving either that: (1) Bernhardt thought about killing Kostner while he was kicking her; or (2) Bernhardt thought about killing Kostner after he had delivered the last kick. I submit that the notion that premeditation encompasses both concurrent-meditation (thinking about it while doing it) and post-meditation (thinking about it after it is done) does not comport with Blacks Law Dictionary’s definition of premeditation, which retains the temporal integrity of the term, to-wit: “Conscious consideration and planning that precedes an act (such as committing a crime); the pondering of an action before carrying it out.” (Emphasis added.) Blacks Law Dictionary 1371 (10th ed. 2014).
Nevertheless, the district court’s modified instruction was so contradictory and misleading that a lay juror could not have clearly understood premeditation to mean either what the majority says it means or what I discern it should mean. To recap, the modified instruction stated as follows, with the first paragraph being the standard PIK instruction:
" ‘Premeditation’ means to have thought over the matter beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more tiran the instantaneous, intentional act of taking another’s fife.
“Premeditation is the process of thinking about a proposed killing before engaging in homicidal conduct.
“Premeditation does not have to be present before a fight, quarrel, or struggle begins. Premeditation is the time of reflection or deliberation. Premeditation does not necessarily mean that an act is planned, contrived, or schemed beforehand.
“Premeditation can be inferred from other circumstances including: (1) the *485 nature of the weapon used, (2) the lack of provocation, (3) the defendant’s conduct before and after the killing, (4) threats and declarations of the defendant before and during the occurrence, or (5) dealing of lethal blows after the deceased was felled and rendered helpless.
“Premeditation can occur during the middle of a violent episode, struggle, or fight.”
Certainly, the last sentence suggested to the jury that Bernhardts premeditation could have occurred during the middle of the violent episode, which, according to Bernhardts estimate, would have been somewhere around the 10th to 15th kick. But the PIK portion of the instruction clarified that to be a premeditated murder, the killer must “have formed the design or intent to kill before the act.” (Emphasis added.) Then, the second paragraph defined the “act” referred to in the first paragraph as being the “homicidal conduct” and required the jury to find that Bernhardt had engaged in “the process of thinking about a proposed killing before engaging in homicidal conduct” (Emphasis added.)
Because the coroner told the jury that the cause of death was multiple blunt force injuries, a rational juror would have understood that the “homicidal conduct” referred to in the instructions meant the multiple lacks Bernhardt inflicted upon Kostner. Consequently, the first part of the instruction told that rational juror that Bernhardt had to form the intent to kill Kostner before he started lacking her. But the last sentence of the instruction contradicted that directive by telling the rational juror that Bernhardt could have formed the intent to kill Kostner in the middle of the homicidal conduct of kicking her. To that rational juror, then, the first and last parts of the instruction present an irreconcilable contradiction.
Similarly, the instructions third paragraph might make sense to a nonlinear thinking juror, but for others, it would be mind-spinning, unintelligible gibberish. The paragraph begins by telling the jury that the defendant did not have to premeditate the killing before beginning a fight, quarrel, or struggle. Then, it explains that the defendant had to have time to reflect or deliberate on the killing. Perhaps those professing to be astute at multi-tasking would not be confused by the concept of taking time for reflection or delib *486 eration while one is engaged in a fight, quarrel, or struggle. But even the multi-taskers would be scratching their heads about the notion that, after the defendant engaged in the “time of reflection or deliberation” on the ldfling, that does not necessarily mean that the ldfling was “planned, contrived, or schemed beforehand.” How does one reflect or deliberate about ldfling the victim without planning, contriving, or scheming to kill the victim? If the defendant was not planning, contriving, or scheming to ldll the victim, he or she was not premeditating the murder.
In my view, this is an example of what happens when various case quotes are taken out of context and thrown together as a jury instruction. The result is that the instruction fails the majority’s test, which requires that the instruction “could not have reasonably misled the jury.” 304 Kan. at 469 (citing State v. Horton, 300 Kan. 477, 491, 331 P.3d 752 [2014]). Moreover, that misdirection denied Bernhardt a fair trial. See Marks, 297 Kan. at 156 (Johnson, J., dissenting) (fair trial requires jury be properly led to understand the concept of premeditation).
Before moving on to the next issue, I pause to observe that there seems to be nothing in the modified instruction which would have informed the jury that Bernhardt could have formed his intent to kill Kostner after the homicidal act of lacking was completed, as the majority suggests. The instruction paragraph referencing defendants conduct after the ldfling simply informs the juiy that what a killer does afterward might imply that the killer had thought the matter over before the ldfling. To the extent the majority suggests that letting the victim die without rendering aid, after inflicting the mortal wound, is tantamount to premeditating the ldfling, I do not understand that to be the law. Even under this courts interpretation of premeditation as being possible up to a nanosecond before an instantaneous ldfling, premeditation should no longer be a possibility after the point in time when the ldfling would be deemed instantaneous.

Voluntary Manslaughter

As I understand the majority’s rationale for finding that a voluntary manslaughter instruction was not factually appropriate, it first *487 determined that there was not a sudden quarrel because Rernhardt and Kostner started a verbal argument at the bar that continued on the ride home; an argument using mere words or gestures is insufficient provocation to support voluntary manslaughter; and the two often argued in that manner, making it foreseeable rather than sudden. Then, when “Kostner did slap Bernhardt,” it merely evidenced that there was “an altercation between [the] parties,” which was insufficient provocation standing alone. 304 Kan. at 477. I have a different view of both the facts and the legal principles.
The majority’s characterization of Kostner s verbal attack as an oft-occurring, normal “argument” and calling her physical attack on Bernhardt a “slap” casts those facts in a fight most favorable to the State. We have clearly stated that the opposite should be true. See State v. Plummer, 295 Kan. 156, 162, 283 P.3d 202 (2012) (“Of course, where the defendant has requested the lesser included offense instruction, the evidence should be viewed in the light most favorable to the defendant.”). At trial, Bernhardt described a more provocative scenario: “She was yelling at me, she reached over and smacked me and I was driving and — I pulled over and pulled her over to — out of the driver’s side by her hair and then she hit the ground and I started kicking her.”
In addition, the majority conveniently ignores Bernhardt’s immediate reaction to being yelled at and smacked while driving his vehicle, preferring instead to talk about his calculated — “not impulsive” — actions after the violent episode had ended. 304 Kan. at 477. His first reaction to being yelled at and smacked was to pull over his vehicle, grab his assailant by the hair, pull her past the steering wheel and out the driver’s door onto the ground, where he commenced to lack her repeatedly “[p]retty much from her waist up,” apparently in such a rage that he could not recall how many times he lacked her or whether he actually lacked her in the head. His response to being pressed on the number of times he lacked Kostner was: “20? 30? I don’t know.” One would certainly expect a person, who had coldly and callously formed the design or intent to ldll a person by kicking them to death, to be more deliberate and calculating in the quality and placement of his lacks. Flailing wildly at the victim’s body innumerable times, without regard for *488 or memory of the location on the victims body where the kicks landed, strikes me as a particularly incredible design for a premeditated killer to form.
From a legal standpoint, one could read the majority opinion as suggesting that it was necessary for Bernhardt to show there was a sudden quarrel to justify the voluntary manslaughter instruction. But, as we have previously clarified, a sudden quarrel is but “ ‘ “one form of provocation for ‘heat of passion’ and is not separate and apart from ‘heat of passion.”” State v. Johnson, 290 Kan. 1038, 1047, 236 P.3d 517 (2010) (quoting State v. Coop, 223 Kan. 302, 307, 573 P.2d 1017 [1978]).” State v. Story, 300 Kan. 702, 711, 334 P.3d 297 (2014). We have defined heat of passion “to include ‘ “ ‘any intense or vehement emotional excitement of the kind prompting violent and aggressive action.”’ [Citations omitted.]’ State v. Wade, 295 Kan. 916, 925, 287 P.3d 237 (2012); see State v. Story, 300 Kan. 702, 711, 334 P.3d 297 (2014) (discussing definition of‘heat of passion); State v. Coop, 223 Kan. 302, Syl. ¶ 1, 573 P.2d 1017 (1978) (heat of passion ‘ “includes an emotional state of mind characterized by anger, rage, hatred, furious resentment, or terror”’).” State v. Brownlee, 302 Kan. 491, 530, 354 P.3d 525 (2015) (Luckert, J., dissenting).
The majority was apparently impressed with the State’s argument that Bernhardt did not specifically testify “ ‘that he somehow snapped, experienced a break from reality, felt insulted, denigrated, or suffered a personal affront.’” 304 Kan. at 477. But in a manner, Bernhardt’s testimony indicated those veiy things. He snapped and immediately pulled to the side of the road, rather than continuing to their residence. He had a sufficient break from reality that he couldn’t remember exactly what happened — how many lacks he delivered or whether any landed on Kostner’s head. He was in such an emotional state of mind that he kicked Kostner — his girlfriend — many, many times, continuing even after she stopped saying anything. If those facts are not indicative of anger, rage, hatred, and/or furious resentment, I am unsure what would qualify.
In my view, “[t]he crime of premeditated murder should be reserved for killings that are calmly planned or designed prior to the commencement of the murderous act, he., murder in cold blood, *489 rather than applied to crimes of passion, regardless of the amount of time that may be consumed by the killers rage.” Marks, 297 Kan. at 153 (Johnson, J., dissenting). In the legislatures view, a lesser included offense instruction is required “where there is some evidence which would reasonably justify a conviction of some lesser included crime.” K.S.A. 2015 Supp. 22-3414(3). Here, there was evidence to reasonably justify a conviction for a heat of passion killing that was as credible, or more so, tiran the evidence of premeditation. Consequently, under our criminal justice system, the jury — -not the judge — should have been permitted to decide which crime Bernhardt committed.
As the majority notes, Bernhardt asserted a claim that the cumulative effect of trial errors denied him a fair trial. I agree with that contention. The judge erred by giving the jury a misleading and contradictory instruction on premeditation and by refusing to give the requested instruction on heat-of-passion voluntary manslaughter as a lesser included offense. Given my inability to reasonably predict what die jury might have done with appropriate instructions on the law, I cannot say that the State has proved the instruction errors to be harmless. I would reverse and remand for a new trial with proper instructions.
# # #