No. 126,820

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CORNELIUS SISSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

A district court's response to a mid-deliberation jury question is reviewed for abuse of discretion. A district court abuses its discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact.

2.

In determining whether the district court's response to a jury question was a correct statement of the law, the appellate court is presented with a legal question, subject to unlimited review. When considering whether a legally appropriate response was still arbitrary, fanciful, or unreasonable, we look at whether no reasonable person would have given the response chosen by the trial court.

3.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.

4.

Introducing a new theory of culpability through a mid-deliberations response to a question from the jury violates a defendant's right to due process.

5.

When the trial court gives an erroneous mid-deliberation instruction in response to a jury question, we use the same reversibility standard as that used for instructional errors occurring at the close of the trial. If the party did not press a timely and specific objection to the answer given, we examine reversibility under the clear error standard. Under the clear error standard, an error is reversible error if the reviewing court is firmly convinced that the jury would have reached a different verdict had the error not occurred.

6.

K.S.A. 2024 Supp. 60-455 does not apply to a witness in a criminal case other than the accused, and evidence that such a witness may have committed a crime or civil wrong cannot be introduced thereunder.

Appeal from Riley District Court; KENDRA S. LEWISON, judge. Submitted without oral argument. Opinion filed March 28, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., BRUNS and PICKERING, JJ.

ARNOLD-BURGER, J.:  Cornelius Sisson appeals his convictions for assault, battery, criminal threat, and harassment by telecommunication device, raising two claims of error:  (1) the district court erred in responding to a jury question by instructing the

2

jury to consider an aiding and abetting theory not argued by the State; and (2) the district court erred in excluding evidence related to prior convictions of a nondefendant witness. After reviewing the issues presented, we conclude that the district court abused its discretion in responding to the jury question, requiring reversal of Sisson's convictions for criminal threat and harassment by telecommunication device and remand for a new trial on those counts. As to the second issue, the district court did not err in excluding the prior convictions.

FACTUAL AND PROCEDURAL HISTORY

On an evening in October 2021, a physical altercation occurred outside of a Dairy Queen in Manhattan, stemming from threatening messages and calls that came from Sisson's phone. After these messages, Sisson and his friend Kenny Dotson confronted Dotson's ex-girlfriend Melissa Henderson at the Dairy Queen where she worked. Henderson's current boyfriend, Courtney McLaurin, happened to arrive simultaneously. Sisson and Dotson then forcefully entered the Dairy Queen, where a fight began between Sisson, Dotson, and McLaurin that eventually moved outside. During the fight, McLaurin wrestled a small bat away from Dotson and then struck Sisson, breaking the bat in two. The fight ended when Henderson retreated into the store and locked the door, after which all three men fled.

For his actions, the State charged Sisson with aggravated burglary, aggravated assault, aggravated battery, criminal threat, and harassment by telecommunication device. Specifically as to the aggravated burglary and aggravated assault charges the jury was advised that "[a] person is criminally responsible for a crime committed by another if the person, either before or during its commission, and with the mental culpability required to commit the crime intentionally aids the other person to commit the crime." It was not given that instruction in relation to any of the other charges. In other words, there was not

3

a general culpability instruction, but language mirroring PIK Crim. 4th 52.140 (2021 Supp.) added on to two specific elements instructions.

During closing arguments, the State argued Sisson was guilty of harassment by telecommunication device and criminal threat because Henderson's testimony showed the threatening messages came from Sisson's phone and with his name, Corn, attached to the messages. Defense counsel argued that there was no evidence that defendant owned the phone used to contact Henderson and that it was only Dotson communicating with Henderson.

During deliberations, the jury submitted the following question:

"For Count #4 & #5

"Is a person criminally responsible for a crime committed by another if the person, either before or during its commission and with the mental culpability required to commit the crime intentionally aids the other person to commit the crime for the counts at

"Count 4: criminal threat
"Count 5: harassment by telecommunication[.]"

The district court's handwritten and signed response—which it prepared after a discussion with the parties about how the evidence was consistent with an aiding and abetting theory on those charges—reflects the following response: "Yes, a person is criminally responsible for a crime committed by another if the person, either before or during its commission, and with the mental culpability required to commit the crime intentionally aids the other person to commit the crime in Count 4 or Count 5."

4

After further deliberation, the jury reached a verdict, acquitting Sisson on the aggravated burglary charge, finding him guilty of the lesser included offenses of simple assault and simple battery as well as criminal threat and harassment by telecommunication device as charged. The district court sentenced Sisson to 20 months' incarceration, which reflected a 14-month prison sentence on the criminal threat charge, a consecutive 180-day jail term on the battery charge, and concurrent 180-day and 30-day jail terms on the harassment by telecommunication device and assault charges. The court granted a downward dispositional departure by imposing a 12-month probation term.

Sisson timely appealed.

ANALYSIS

I.      THE DISTRICT COURT ERRED IN INSTRUCTING THE JURY, DURING DELIBERATIONS, ON AN AIDING AND ABETTING THEORY THAT THE STATE HAD NOT ASSERTED

Sisson argues the district court committed reversible error by instructing the jury mid-deliberation to consider an aiding and abetting theory that was not argued during trial. To be clear, although the district court also instructed the jury to consider whether Sisson aided and abetted on the aggravated assault charge—which the jury reduced to a simple assault in its verdict—Sisson is not contesting that conviction since he had the opportunity to put on a defense against it. He does, however, contend that allowing the jury to consider aiding and abetting on the criminal threat and harassment by telecommunication device charges was legally inappropriate because it violated his constitutional right to put on a complete defense. Because of that error, Sisson argues he must receive a new trial because the jury's question establishes that it was not convinced of his guilt for these charges as a principal.

The State counters that Sisson cannot establish error because he acquiesced to the district court's instruction by raising no objections and failing to ask the court to reopen evidence or allow additional closing arguments. Alternatively, the State argues any error was not reversible because the jury convicted Sisson of battery and assault for his participation in the fight, so "[i]t was not a stretch" to say he was also guilty of criminal threat and harassment by telecommunication device "especially" since Sisson presented "no credible argument" to contest the evidence that both he and Dotson used Sisson's phone to harass and threaten Henderson.

     a. *Sisson did not invite error.*

Before addressing the merits of the case, the State argues that Sisson invited the error of which he now complains. A litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). "Whether the doctrine of invited error applies presents a question of law" over which this court exercises unlimited review. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016).

As the Kansas Supreme Court recently clarified, application of the invited-error doctrine "turns on whether the instruction would have been given—or omitted—but for *an affirmative request* to the court for that outcome later challenged on appeal." (Emphasis added.) *State v. Douglas*, 313 Kan. 704, 708, 490 P.3d 34 (2021). Thus, "[t]he ultimate question is whether the record reflects the defense's action *in fact induced* the court to make the claimed error." 313 Kan. at 708. This rationale "applies equally when assessing the doctrine's applicability to a district court's response to a jury question." *State v. Martinez*, 317 Kan. 151, 168-69, 527 P.3d 531 (2023). Based on further review of the record, this court cannot say that defense counsel affirmatively induced the district court's response to the jury's question.

The record shows that the jury's question mirrored the language for the aiding and abetting instruction it had received on the aggravated burglary and aggravated assault charges. Upon receiving the jury's question, the district court explained that an off-the-record discussion with the parties and its own interpretation of the question gave the impression that the jury was "asking if they can apply that aiding and abetting theory to Counts 4 and 5" despite the State only arguing Sisson was a principal for those crimes. The court proposed responding affirmatively and essentially repeating the language posed in the question. The court added that the evidence was "consistent" with an aiding and abetting theory because Henderson stated she believed both Sisson and Dotson used Sisson's phone to communicate threats toward Henderson and McLaurin.

The State did not object to the proposed response, asserting that "defense may argue that we didn't list the aiding or abetting theory in our charging document," but offering that it was not required to do so under *State v. Dupree*, 304 Kan. 377, 384-85, 373 P.3d 811 (2016) (failure to including aiding and abetting language in complaint did not render complaint insufficient or deprive court of jurisdiction). The court then turned to defense counsel, who proposed an additional instruction on the criminal threat charge based on *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019), stating "that a person cannot be found guilty if they recklessly aid the other person to commit the crime." The court asked defense counsel, "So you don't have an objection to the language that the Court's proposing, but you want to add that additional language about the reckless culpable mental state?" To which counsel responded, "Yes, Judge." The court declined to give Sisson's additional instruction, explaining that it would be confusing and unnecessary since the jury had already been instructed on the culpable mental state element for the relevant counts.

The district court then explained that it would write out the response and "give you both an opportunity to see it." The court further advised Sisson that he could have the response passed back to the jury or "[t]he statute gives you the right to request that the

7

jury be brought in and given the answer on the record." Sisson chose to have the response read to the jury in the courtroom "because I don't want them to get confused." The transcript indicates the court then asked defense counsel to read over the prosecutor's shoulder as the response was prepared, defense counsel responded, "Yeah, that will work, Judge." The written response in the record and the court's oral recitation mirrored the language used in the jury's question which, again, was essentially identical to the aiding and abetting instruction previously given.

Here, the record shows that Sisson's defense counsel merely acquiesced to—and did not affirmatively request—the response formulated by the district court. The on-the-record discussion of the jury's question shows everyone understood the jury wanted to know if it could find Sisson guilty under an aiding and abetting theory despite that theory not being specifically presented by the State. Although defense counsel responded affirmatively to the court's question about having no objection, the court simultaneously had asked a clarifying question about other additional language proposed by defense counsel. Defense counsel's answer to this compound question and passive acceptance of the court's suggestion to read over the prosecutor's shoulder while the court wrote the response should not be seen as inducing the district court's response to instruct the jury on aiding and abetting. Thus, Sisson did not invite any error.

      b.     *The law related to aiding and abetting*

"A person is criminally responsible for a crime committed by another if such person, acting with the mental culpability required for the commission thereof, advises, hires, counsels or procures the other to commit the crime or intentionally aids the other in committing the conduct constituting the crime." K.S.A. 21-5210. This statute does not create a separate element of a crime but merely assigns criminal responsibility in defined factual circumstances. And the prosecution is not required to charge aiding and abetting

8

in order to pursue such a theory at trial. It is sufficient to simply instruct the jury on this prosecution theory. *State v. Betancourt*, 299 Kan. 131, 140, 322 P.3d 353 (2014).

Here, the court did not give a general aiding and abetting instruction to all the crimes charged, as set out in PIK Crim. 4th 52.140 (2021 Supp.), but limited the culpability provision only to aggravated burglary and aggravated assault. For the remaining charges, the State argued Sisson was liable as a principal.

    c.    *The district court abused its discretion in its response to the jury question.*

A district court's response to a mid-deliberation jury question is reviewed for abuse of discretion. *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014). A district court abuses its discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). In determining whether the district court's response was a correct statement of the law, the appellate court is presented with a legal question, subject to unlimited review. But, when considering whether a legally appropriate response was still arbitrary, fanciful, or unreasonable, we look at whether no reasonable person would have given the response chosen by the trial court. *Lewis*, 299 Kan. at 855-56; *State v. Wade*, 295 Kan. 916, 921-23, 287 P.3d 237 (2012) (adopting this standard when faced with the answer given and an answer that one of the parties deems would be a better answer, both of which would be legally appropriate).

As the State points out, Sisson does not dispute that the evidence supported giving an aiding and abetting instruction on the criminal threat and harassment by telecommunication device charges. As a result, Sisson has abandoned any argument that the district court's response to the jury's question was unsupported by the evidence or that such an instruction would have been factually inappropriate. See *State v. Meggerson*, 312

Kan. 238, 246, 474 P.3d 761 (2020) (points raised incidentally in a brief and not argued therein are deemed waived or abandoned).

Sisson does, however, argue an aiding and abetting instruction was not legally appropriate, primarily relying on the rationale expressed by this court in *State v. Hover*, No. 113,214, 2015 WL 9287058 (Kan. App. 2015) (unpublished opinion). Like here, Hover was not charged under an aiding and abetting theory, nor was the jury instructed on a defendant's culpability for aiding and abetting. Yet, mid-deliberations, the jury submitted a question regarding whether Hover shared responsibility for the harm that was done. The district judge responded by giving an aiding and abetting instruction. The *Hover* panel found that the district court erred by introducing a new theory of culpability that had not been argued by the parties. By doing so, the district court had fundamentally changed the grounds upon which the jury could convict Hover. 2015 WL 9287058, at *7. Based upon that standard, we are persuaded by the panel's analysis under similar circumstances to those we are presented with here.

Just as in *Hover*, Sisson had no opportunity to defend against the aiding and abetting theory on the criminal threat and harassment by telecommunication device charges because that theory was not presented by the State during trial. The State specifically referred in closing to its theory of aiding and abetting as it related to aggravated burglary and aggravated assault, but claimed the phone calls which contained the threats came directly from Sisson as evidenced by the fact that it was his phone and name on the texts. In closing, the prosecutor first referred to the criminal threat and harassment charges—noting it was Sisson's phone and the texts suggested they were from him—clearly asserting Sisson was the principal. But more telling, the prosecutor next moved on to the aggravated burglary and assault charges (counts 1-2) and told the jury: "Now, this count, along with the second count, the State is going with the theory of aid and abet," and clarified by saying, "That means all participants in a crime are equally responsible without regard to the extent of their participation."

10

For the first time on appeal, Sisson argues that the court's response resulted in a violation of his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Due Process Clause guarantees criminal defendants "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). This right "'necessarily includes [the] right to have [] counsel make a proper argument on the evidence and the applicable law . . . , and the trial court has no discretion to deny the accused such right.'" *Herring v. New York*, 422 U.S. 853, 860, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975) (quoting *Yopps v. State*, 228 Md. 204, 207, 178 A.2d 879 [1962]). The Kansas Supreme Court has said the right to present a defense "is fundamental but its protection tempered by sensible control of the criminal trial process" meaning the right is "subject to procedural rules and evidentiary rulings that serve legitimate interests." *State v. Carr*, 300 Kan. 1, 209, 331 P.3d 544 (2014), *rev'd and remanded on other grounds* 577 U.S. 108, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016).

We agree with Sisson and the panel in *Hover* and find that introducing a new theory of culpability through a mid-deliberations response to a question from the jury violates a defendant's right to due process. Accordingly, giving an aiding and abetting instruction that relied on a theory that was not presented by the State at any point before deliberations fundamentally changed the grounds on which the jury could convict. We find that because the court's answer was legally erroneous, the trial court abused its discretion.

d.      *The court's response requires reversal.*

Having concluded that the district court abused its discretion, our Supreme Court has directed that our reversibility inquiry when the trial court gives an erroneous mid-deliberation instruction in response to a jury question is the same as that used for instructional errors occurring at the close of the trial. If the party did not press a timely

11

and specific objection to the answer given, we examine reversibility under the clear error standard. *Lewis*, 299 Kan. at 857 (adopting the standard set out in *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 [2012]). Under the clear error standard, an error is reversible error if the reviewing court is firmly convinced that the jury would have reached a different verdict had the error not occurred. *Martinez*, 317 Kan. at 162.

Although we have found that Sisson did not invite the error he alleges, he did not lodge a specific objection to the answer either, nor did he raise any of the constitutional claims he makes on appeal. So we turn to the reversibility standard of clear error.

Sisson bears the burden of firmly convincing this court that the jury would have reached a different verdict if the error had not occurred based on the entire record. *State v. Moore,* 319 Kan. 557, 570, 556 P.3d 466 (2024). He has met that burden. We are firmly convinced the jury would not have asked about whether it could convict him of criminal threat or harassment by telecommunication device as an aider and abettor if it believed he was guilty of those offenses solely as a principal. Accordingly, we conclude that the district court's erroneous response to the jury's question resulted in clear error. The appropriate remedy is to reverse Sisson's convictions for criminal threat and harassment by telecommunication device and remand for a new trial.

II.     THE DISTRICT COURT DID NOT ERR IN REFUSING TO ADMIT BAD ACTS EVIDENCE

For his second issue, Sisson argues his constitutional rights to present a defense and confront a witness were violated because he was not permitted to present evidence of McLaurin's prior crimes under K.S.A. 2021 Supp. 60-455(b). In short, Sisson hoped to present evidence that McLaurin previously assaulted someone using a bat, making it likely that McLaurin brought the bat to the Dairy Queen and further allowed the jury to conclude Sisson acted in self-defense. The district court excluded the evidence of

12

McLaurin's prior crimes because it found K.S.A. 2021 Supp. 60-455(b) did not apply to McLaurin since he was not being accused of a crime.

But as Sisson concedes in his reply brief, the State correctly notes that Sisson is not entitled to relief on this issue because our Supreme Court has decided the issue contrary to his position. In *State v. Bryant*, 228 Kan. 239, 245, 613 P.2d 1348 (1980), the Kansas Supreme Court held that "K.S.A. 60-455 does not apply to a witness in a criminal case other than the accused, and evidence that such a witness may have committed a crime or civil wrong cannot be introduced thereunder." Thus, under the rule from *Bryant*, Sisson was not permitted to introduce evidence of McLaurin's prior crimes under K.S.A. 2021 Supp. 60-455(b).

"This court is duty bound to follow Kansas Supreme Court precedent absent some indication the court is departing from its previous position. [Citation omitted.]" *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869 (2007). Sisson asserts *Bryant* is no longer good law because recent Kansas Supreme Court decisions have suggested that the court would apply the "'ordinary, contemporary, and common meaning'" of the word "person" to reach a different outcome. See *State v. Hambright*, 318 Kan. 603, 608, 545 P.3d 605 (2024) (ordinary meaning of "dagger" included the knife possessed by defendant); *State v. Hopkins*, 317 Kan. 652, 655-57, 537 P.3d 845 (2023) ("Under the obvious and plain meaning of the words chosen by the Legislature, a defendant shall be awarded jail time credit for *all* time spent in custody pending the disposition of his or her case.").

As he notes, the *Bryant* court explained:

> "It is true that K.S.A. 60-455 speaks of 'person' rather than 'defendant.' However, defendant can take no refuge in the use of the term 'person.' One must bear in mind that the statute also applies to civil actions where the acts of a plaintiff or, say, a nonparty agent for a party principal might be at issue. K.S.A. 60-455 has been before this court in

13

numerous cases and our research has disclosed no instance where its applicability to witnesses in criminal cases has been even intimated." 228 Kan. at 243.

Contrary to Sisson's point, the statutory interpretation analyses in *Hambright* and *Hopkins* do not suggest that the Kansas Supreme Court would depart from *Bryant*. Kansas courts have interpreted statutes based on the ordinary meaning of the language used for much longer than the past 45 years. See *State v. Chapman*, 33 Kan. 134, 136, 5 P. 768 (1885) ("As a rule, penal statutes must be strictly construed, and they cannot be extended beyond the grammatical and natural meaning of their terms, upon the plea of failure of justice."). The Kansas Supreme Court has also adhered to *Bryant* in later decisions, as recently as 2006. See *State v. Boyd*, 281 Kan. 70, 95, 127 P.3d 998 (2006) (finding defendant had no valid objection to evidence of prior bad acts of a nondefendant) (citing *State v. Harris*, 259 Kan. 689, Syl. ¶ 3, 915 P.2d 758 [1996] [upholding *Bryant*]). But see Prater & Somogye, *Some Other Dude Did It (but Will You Be Allowed to Prove It?)*, 67 J.K.B.A. 28 (May 1998) (disagreeing with *Bryant*'s statutory interpretation analysis). As a result, this court must likewise adhere to *Bryant* and conclude that the district court did not err in disallowing evidence of a nondefendant witness' prior crimes under K.S.A. 2021 Supp. 60-455(b).

We reverse Sisson's convictions for criminal threat and harassment by telecommunication device and remand for a new trial on those counts. We affirm the district court's refusal to allow K.S.A. 2021 Supp. 60-455 evidence to be used against a witness, and thereby affirm Sisson's remaining convictions.

Affirmed in part, reversed in part, and remanded with directions.