IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,841

STATE OF KANSAS,
*Appellee*,

v.

PABLO ALBERTO GONZALEZ,
*Appellant.*

SYLLABUS BY THE COURT

1.

Determining a statute's constitutionality is a question of law subject to unlimited review. An appellate court presumes statutes are constitutional and must resolve all doubts in favor of a statute's validity. Further, the appellate court must interpret a statute in a manner rendering it constitutional if there is any reasonable construction that will maintain the Legislature's apparent intent.

2.

A statute must clearly violate the constitution before it may be struck down.

3.

In determining whether a criminal statute is so vague that it violates due process, appellate courts conduct a two-prong inquiry, asking: (a) whether the statute gives fair warning to those potentially subject to it; and (b) whether it adequately guards against arbitrary and unreasonable enforcement.

4.

Unintentional second-degree murder requires that the defendant acted recklessly under circumstances showing extreme indifference to the value of human life. A

defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result of the defendant's actions will follow. This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation.

5.

K.S.A. 2016 Supp. 21-5403(a)(2) does not require a jury to imagine an ordinary reckless killing to determine if a defendant killed a human being "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." A jury only has to look at the facts as alleged, determine whether those facts are properly proven, and then apply them to the offense's elements.

6.

To meet the sufficiency of evidence standard, there must be evidence supporting each element of a crime. An appellate court reviews sufficiency by looking at all the evidence in a light most favorable to the prosecution and determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

7.

Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority or in the face of contrary authority, is akin to failing to brief an issue. When a party fails to brief an issue, that issue is deemed waived or abandoned.

8.

A district court's response to a mid-deliberation jury question is reviewed for abuse of discretion.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 10, 2016. Appeal from Pottawatomie District Court; JEFFREY R. ELDER, judge. Opinion filed March 9, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, argued the cause, and *Randall L. Hodgkinson*, of the same office, was on the brief for appellant.

*Steven J. Obermeier*, assistant solicitor general, argued the cause, and *Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  An intoxicated Pablo Gonzalez shot and killed his friend, Levi Bishop, while they celebrated New Year's Eve. A jury convicted Gonzalez of unintentional second-degree murder. On appeal, Gonzalez challenges:  (1) the unintentional second-degree murder statute's constitutionality; (2) the evidence's sufficiency; (3) the trial court's actions in answering a jury question; and (4) the court's failure to give a limiting instruction about certain evidence. The Court of Appeals affirmed. *State v. Gonzalez*, No. 112,841, 2016 WL 3202555 (Kan. App. 2016) (unpublished opinion). We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts are mostly undisputed, except whether Gonzalez knew his gun was loaded as events unfolded.

Gonzalez and his friends—Levi (the victim), Bailey Bishop (Levi's sister; Gonzalez' girlfriend), Jeff Swisher (Levi's step-brother), and Zachary Cashman—attended various New Year's Eve parties. At some point, the four men wanted to return to

3

the first party and Gonzalez drove them. Cashman and Swisher passed out in the back seat.

Around 4:30 a.m. on January 1, 2014, Gonzalez drove to Andrew Schindler's house. Gonzalez and Levi got out of the car. When Gonzalez stepped out, his gun fell onto the ground. He picked it up, put it in his pocket, and walked around the car where Schindler and Levi were talking. According to Schindler, Gonzalez "was pointing [the gun] around and being stupid." Schindler testified Gonzalez pointed the gun at Schindler's head once or twice. He told Gonzalez to stop. Schindler headed into the house to get cigarettes so they would leave. Schindler saw John Syrokos walking toward Gonzalez and Levi from down the street.

Syrokos testified he left a party around 4:30 a.m. and started walking home. He saw Gonzalez pull his handgun out and chamber a round. Gonzalez called out asking Syrokos to identify himself. Feeling scared, Syrokos said his name, and, as they got closer, Gonzalez put the gun under his coat. Syrokos continued home after 10 or 15 minutes. When he got home, he called the sheriff's office to report what he saw.

Shortly thereafter, the shooting occurred only a couple of blocks from Schindler's house. Schindler testified it must have happened "[w]ithin five minutes of [them] leaving [his] house." At approximately 4:45 a.m., St. Marys Police Officer Mark Lamberson was at the police station when he saw a car pull into the parking lot and heard honking. Gonzalez approached and banged on the station door.

Lamberson described Gonzalez as intoxicated, "emotional, scared, frantic, [and] distraught." Gonzalez said he needed "help" because he had "shot [his] boy in the face." As the two approached the car, the officer noticed a gun on the ground near the driver's side. Levi was dead in the passenger seat. Swisher stood outside and Cashman was crying

4

in the back seat. Lamberson took the gun, which had one round in the chamber. He arrested Gonzalez.

The State charged Gonzalez with intentional second-degree murder, an alternative count of unintentional second-degree murder, and one count of aggravated assault. A jury convicted him of unintentional second-degree murder and acquitted him of aggravated assault. The court imposed a 123-month prison sentence. Gonzalez timely appealed.

A Court of Appeals panel affirmed. *Gonzalez*, 2016 WL 3202555, at *1. Gonzalez petitioned this court for review, which we granted. Jurisdiction is proper. K.S.A. 20-3018(b) (petition for review of Court of Appeals' decision); K.S.A. 60-2101(b) (providing Supreme Court jurisdiction over cases subject to review under K.S.A. 20-3018).

CONSTITUTIONALITY OF THE CRIME OF CONVICTION

Gonzalez claims for the first time on appeal that the statute defining unintentional second-degree murder is unconstitutionally vague. He advances three reasons. First, he claims *State v. Deal*, 293 Kan. 872, 269 P.3d 1282 (2012), blurred the distinction between unintentional second-degree murder and involuntary manslaughter because it held the second-degree murder statute focuses culpability on whether a killing is intentional or unintentional, not on whether a deliberate and voluntary act leads to death. Second, he asserts amendments to the definition of "'recklessly'" in K.S.A. 2016 Supp. 21-5202(j), made unintentional second-degree murder and involuntary manslaughter the same crime. Third, he cites *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), to argue the unintentional second-degree murder statute requires a jury to first make a determination of the "ordinary" reckless killing, which "creates grave uncertainty."

5

*Additional Facts*

In discussing Gonzalez' vagueness claim, it is helpful to review how the jury was instructed about two of the crimes charged. After instructing the jury on intentional second-degree murder, which is not relevant here, the trial court instructed on unintentional second-degree murder under K.S.A. 2016 Supp. 21-5403(a)(2) and involuntary manslaughter under K.S.A. 2016 Supp. 21-5405(a)(1). The relevant instructions provided as follows:

Instruction No. 11 stated:

"If you do not agree that the defendant is guilty of Murder in the Second Degree, committed Intentionally, you should then consider the lesser included offense of Murder in the Second Degree, committed Unintentionally.

"To establish this charge, each of the following claims must be proved:

"1. The defendant killed Levi William Bishop unintentionally but recklessly *under circumstances that show extreme indifference to the value of human life*.

"2. This act occurred on or about the 1st day of January, 2014, in Pottawatomie County, Kansas.

"A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that a result of the defendant's actions will follow. This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation." (Emphasis added.)

6

Instruction No. 11 further stated:

"If you do not agree that the defendant is guilty of Murder in the Second Degree, committed Unintentionally, you should then consider the lesser included offense of Involuntary Manslaughter.

"To establish this charge, each of the following claims must be proved:

"1. The defendant killed Levi William Bishop.

"2. It was done recklessly.

"3. This act occurred on or about the 1st day of January, 2014, in Pottawatomie County, Kansas.

"A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that a result of the defendant's actions will follow. This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

Instruction No. 7 stated:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge."

Instruction No. 10 stated:

"When there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only."

*Standard of Review*

"Determining a statute's constitutionality is a question of law subject to unlimited review. We presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Further, we must interpret a statute in a manner that renders it constitutional if there is any reasonable construction that will maintain the legislature's apparent intent. *State v. Gaona*, 293 Kan. 930, 957-58, 270 P.3d 1165 (2012)." *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014).

Because Gonzalez challenges the statute's constitutionality, he carries the burden of overcoming that presumption.

"'A statute must clearly violate the constitution before it may be struck down.' [Citations omitted.] 'This court not only has the authority, but also the duty, to construe a statute in such a manner that is constitutional if the same can be done within the apparent intent of the legislature in passing the statute.' [Citation omitted.]" *State v. Robinson*, 261 Kan. 865, 874-75, 934 P.2d 38 (1997).

*Discussion*

Unintentional second-degree murder is defined as: "[T]he killing of a human being committed . . . unintentionally but recklessly *under circumstances manifesting extreme indifference to the value of human life*." (Emphasis added.) K.S.A. 2016 Supp. 21-5403(a)(2). Involuntary manslaughter is defined as: "[T]he killing of a human being committed . . . [r]ecklessly." K.S.A. 2016 Supp. 21-5405(a)(1). "A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2016 Supp. 21-5202(j).

8

Instruction No. 11 captures the statutory distinction by requiring the jury to find the killing was committed "under circumstances that show extreme indifference to the value of human life" to convict Gonzalez of unintentional second-degree murder. The instruction clearly did not require this finding to convict him of involuntary manslaughter. But Gonzalez contends the statutory phrase "under circumstances manifesting extreme indifference to the value of human life" is unconstitutionally vague because it fails to sufficiently distinguish for the jury a difference between unintentional second-degree murder and involuntary manslaughter. He offers the same three arguments he raised before the panel without explaining to this court why the panel was wrong.

In determining whether a criminal statute is so vague that it violates due process, appellate courts conduct a two-prong inquiry, asking: (1) whether the statute gives fair warning to those potentially subject to it; and (2) whether it adequately guards against arbitrary and unreasonable enforcement. *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015). Gonzalez' argument falls in the second category by questioning whether the jury could distinguish between the crime of conviction and involuntary manslaughter.

In *Robinson*, the court considered whether the phrase "extreme indifference to the value of human life" was unconstitutionally vague as used when describing the elements for unintentional but reckless second-degree murder—also known as depraved heart murder. The defendant argued the statute did not adequately differentiate itself from reckless involuntary manslaughter.

The court rejected this by holding, "Based on the plain language of the depraved heart second-degree murder statute and the legislative history behind it, the legislature intended for the depraved heart murder statute to carry a *higher degree of culpability* than

9

the reckless involuntary manslaughter statute, thereby making the two statutes distinguishable." (Emphasis added.) *Robinson*, 261 Kan. at 875.

The *Robinson* court further noted the unintentional second-degree murder statute was different from involuntary manslaughter because "[d]epraved heart murder requires the additional element that the reckless killing occur under circumstances manifesting extreme indifference to the value of human life." 261 Kan. at 876. In other words, the statutory language used in the unintentional second-degree murder statute "describes a kind of culpability that differs in degree but not in kind from the ordinary recklessness required for manslaughter." 261 Kan. at 878.

The court explained:

"The phrase in the depraved heart murder statute requiring the 'extreme indifference to the value of human life' indicates, as the legislature intended, that this statute requires a higher degree of recklessness than that required by the reckless involuntary manslaughter statute. If a jury is given a lesser included instruction on reckless involuntary manslaughter, then the jury must assume that some killings fall under this crime. Thus, the jury is put on notice that it must determine whether a reckless killing involves an extreme degree of recklessness and is depraved heart murder or involves a lower degree of recklessness and is involuntary manslaughter. The jury does this by determining whether a particular reckless killing indicates an extreme indifference to the value of human life which is beyond that indifference present in all reckless killings. [Citation omitted.]" *Robinson,* 261 Kan. at 876-77.

*1. The reliance on* Deal *is misplaced.*

Gonzalez argues *Deal* clarified that the "recklessness" involved in reckless homicide refers to the risk of death, which reflected a departure from *Robinson*. But he misreads the case.

10

A jury convicted Deal of unintentional second-degree murder. Deal argued he acted intentionally in beating a victim, so there was no evidence to support an argument that he acted unintentionally in inflicting the blows. The *Deal* court rejected this argument, holding the unintentional second-degree murder statute "*focuses culpability on whether a killing is intentional*, not on whether a deliberate and voluntary act leads to death." (Emphasis added.) 293 Kan. at 873.

After noting this same background, the *Gonzalez* panel concluded that *Deal* did not depart from *Robinson*. *Gonzalez*, 2016 WL 3202555, at *6. Notably, Gonzalez advances no argument explaining why the panel was wrong in its analysis, and we fail to discern any. The *Deal* court specifically noted there was evidence, including Deal's own statement that he did not intend to kill his victim, to support the conviction for unintentional but reckless second-degree murder. *Deal*, 293 Kan. at 885-86. Gonzalez' arguments regarding *Deal* are without merit.

### 2. *The amended definition does not make the statute unconstitutionally vague.*

The statutory definition of "recklessly" was enacted as part of the 2010 Kansas Criminal Code recodification. L. 2010, ch. 136, § 13. It states: "A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that *a result will follow*, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Emphasis added.) K.S.A. 2016 Supp. 21-5202(j).

Before the recodification, K.S.A. 21-3201(c) provided, "Reckless conduct is conduct done under circumstances that show a realization of the imminence of danger to

11

the person of another and a conscious and unjustifiable disregard of that danger. The term 'gross negligence' . . . [is] included within the term 'recklessness' as used in this code."

Gonzalez argues inclusion of "result" in the current definition makes the phrase "under circumstances manifesting extreme indifference to the value of human life" unconstitutionally vague because "every time a person disregards an unjustifiable risk that a death will occur in gross deviation of the reasonable standard of care, it will show extreme indifference to the value of human life on some level." He contends failure to "qualif[y] in some way" the extreme indifference language leaves a jury unable to distinguish between unintentional second-degree murder and involuntary manslaughter.

But that unsupported claim ignores the recognized spectrum of culpability for the results of one's reckless acts. Under our statutes, "[r]ecklessness that can be assimilated to purpose or knowledge is treated as depraved heart second-degree murder, and less extreme recklessness is punished as manslaughter." *Robinson*, 261 Kan. at 877-78. The instructions required the jury to place Gonzalez' conduct on that spectrum by deciding whether the facts showed he was not just reckless in disregarding the risk that Levi would die, but also extremely indifferent to the value of human life.

In other words, as the panel correctly noted,

"To convict a defendant charged with unintentional second-degree murder, the State is required to prove not only that the defendant consciously disregarded a substantial and unjustifiable risk that death will result from existing circumstances but also that the defendant did so under 'circumstances manifesting extreme indifference to the value of human life.' [Citation omitted.] Although recklessness is an essential element to prove the offense in both statutes, the unintentional second-degree murder statute still requires an additional element." *Gonzalez*, 2016 WL 3202555, at *6.

12

The bottom line is that the new definition does not alter *Robinson*'s rationale—a difference between unintentional second-degree murder and involuntary manslaughter is one of degree and not one of kind. *Robinson*, 261 Kan. at 878. Gonzalez' argument is without merit.

3. *The claim based on* Johnson *is misplaced.*

Gonzalez next asserts the United States Supreme Court's holding in *Johnson*, 135 S. Ct. 2551, invalidates *Robinson*. In that federal case, the Government sought an enhanced sentence under the Armed Career Criminal Act, which imposed an increased prison term if a defendant had three previous convictions for a "'violent felony.'" 135 S. Ct. at 2555. The term "violent felony" was defined to include "any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" 135 S. Ct. at 2555. The Court held this denied "fair notice to defendants and invites arbitrary enforcement by judges," such that "[i]ncreasing a defendant's sentence under the clause denies due process of law." 135 S. Ct. at 2557.

The *Johnson* Court pointed out two features making the federal statute unconstitutionally vague. First, it left "grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." 135 S. Ct. at 2557. This is because in applying the language a court must assess "whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" 135 S. Ct. at 2557. Second, the language left "uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." 135 S. Ct. at 2558.

13

Gonzalez argues the same vagueness appears in our unintentional second-degree murder statute. Quoting *Robinson*, 261 Kan. at 877, he claims "[t]o the extent that unintentional second-degree murder requires something 'which is beyond that indifference present in all reckless killings,' it would require a jury to make a determination of the 'ordinary' reckless killing." But that argument fails.

The Kansas statute does not require a jury to imagine an ordinary reckless killing to determine if a defendant killed a human being "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 2016 Supp. 21-5403(a)(2). Rather, "[t]he jury does this by determining whether a *particular reckless killing* indicates an extreme indifference to the value of human life which is beyond that indifference present in all reckless killings." (Emphasis added.) *Robinson*, 261 Kan. at 877. Put another way, a jury applies the statutory definition of unintentional second-degree murder to the real-world facts before it. This process does not require a jury to imagine anything. Gonzalez' jury only had to look at the facts as alleged, determine whether those facts were properly proven, and then apply them to the offense's elements as correctly set forth in the jury instructions.

And *Johnson* itself makes this distinction. The Court noted there are many federal and state laws requiring "gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*" and held there is no doubt of "the constitutionality of [those] laws that call for the application of a qualitative standard such as 'substantial risk' to real-word conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 135 S. Ct. at 2561. K.S.A. 2016 Supp. 21-5403(a)(2) calls for application of a distinguishing qualitative standard—"extreme indifference to the value of human life"—to real-world

14

conduct. *Johnson* does not invalidate *Robinson*'s rationale; indeed, it reaffirms the constitutionality of statutes like the ones at issue in *Robinson* and the current case.

Finally, Gonzalez insists the statute is unconstitutionally vague because the jury asked for clarification about the difference between the two crimes. But this court rejected that same argument in *State v. Cordray*, 277 Kan. 43, 51-52, 82 P.3d 503 (2004) (statute's vagueness not shown by jury asking for clarification of the phrase "extreme indifference to the value of human life").

Gonzalez offers no reason to revisit *Robinson* and its progeny and does not overcome the statute's presumption of constitutionality.

SUFFICIENCY OF THE EVIDENCE

Gonzalez concedes he shot and killed Levi but contends the evidence does not support the jury's finding he acted under circumstances manifesting extreme indifference to the value of human life. He argues he did not know the gun was loaded and did not intend to kill Levi. He sets out evidence showing he had no motive to kill Levi, e.g., they were long-time friends; they had no conflicts; and Gonzalez sought help for him. He further insists—in an argument tied to the previous issue just discussed—that the State failed to introduce evidence about other cases involving "ordinary" recklessness in an involuntary manslaughter case for the jury to compare with his case. The panel rejected the sufficiency claim. *Gonzalez*, 2016 WL 3202555, at *8-9. So do we.

*Standard of Review*

"In order to meet the sufficiency of the evidence standard, there must be evidence supporting each element of a crime." *State v. Williams*, 299 Kan. 509, 528, 324 P.3d 1078

15

(2014), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). An appellate court reviews sufficiency by "looking at all the evidence in a light most favorable to the prosecution and determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). In doing so, the appellate court generally will "not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *Williams*, 299 Kan. at 525.

*Additional Facts*

According to Gonzalez' testimony at trial, the group left a New Year's Eve party, drove out of town, and did some shooting with his handgun before dropping by Schindler's house. While Swisher and Cashman were sleeping in the back, Gonzalez pointed the gun at his own head. Levi said, "Don't do that." Gonzalez responded that it was not loaded. He pointed it at Levi and pulled the trigger. The gun discharged. Gonzalez tried to call 911 on his cell phone but was too drunk.

Gonzalez acknowledged he pulled the trigger and admitted he was responsible for Levi's death. He testified he did not know the gun was loaded and did not intend to kill Levi. Gonzalez said he was familiar with guns. He further said he had known Levi for 10 years, liked him, and had been dating Levi's sister for almost four years.

When interviewed the morning of the shooting, Gonzalez claimed it was accidental and blamed the trigger safety on the gun or a bump in the road. His blood-alcohol level was .25, which is over three times the driving limit. Gonzalez was intoxicated when interviewed.

The coroner testified Levi died from a gunshot wound to the neck. From the markings around the wound, the coroner said the gun must have been nearly against the neck when discharged.

Cole Goater, a Kansas Bureau of Investigation forensic scientist, examined the gun and tested it for functionality and trigger pull. Goater said the gun operated properly and the trigger pull was within standard specifications. There was nothing unusual when Goater fired the weapon. He said all four safety features functioned correctly. He also testified someone would be able to tell if a cartridge was in the chamber because the gun had a loaded-chamber indicator. He said the safety mechanisms are "designed to prevent the striker from moving forward" unless the trigger is pulled.

A defense expert also testified the trigger had to be pulled for the gun to fire, that the four safety mechanisms were working properly, and the gun was functionally sound. He said one could "see" or "feel" that the gun was cocked.

*Discussion*

Gonzalez argues he did not know the gun was loaded, so his conduct does not rise to extreme indifference to the value of a human being, but he ignores contradictory evidence.

When viewed in the light most favorable to the prosecution, the evidence shows: (1) Gonzalez was very drunk; (2) he chambered a round in the gun after the four had been out shooting it; (3) he casually pointed the loaded weapon at two others—Schindler and Syrokos; (4) he was experienced with guns; (5) the gun functioned properly, including all the safety features; (6) the gun had a functioning loaded-chamber indicator; (7) one could see when the gun was cocked; and (8) the gun was nearly against Levi's neck when

discharged. Based on our standard of review, sufficient evidence supports Gonzalez' conviction of unintentional second-degree murder under K.S.A. 2016 Supp. 21-5403(a)(2).

Two cases previously mentioned—*Deal*, 293 Kan. 872, and *Cordray*, 277 Kan. 43—bolster this conclusion. In *Deal*, the defendant confronted the victim about an alleged incident with Deal's girlfriend. While arguing, Deal struck the victim in the head with a tire iron. Deal told law enforcement officers he did not intend to kill the victim. The *Deal* court concluded "hitting someone in the head with a metal bar" showed "a realization of danger and a conscious and unjustifiable disregard of that danger in circumstances manifesting an extreme indifference to the value of human life." Accordingly, the evidence was sufficient to support the conviction. 293 Kan. at 885-86. In *Cordray*, the defendant accidently shot and killed the victim while trying to intimidate a group of people in a vehicle who were trespassing. The *Cordray* court held the evidence showing defendant fired into darkness in the direction of a vehicle he knew was occupied was sufficient for a rational fact-finder to find him guilty of unintentional second-degree murder. 277 Kan. at 56.

Similarly, the evidence in Gonzalez' case establishes not only reckless behavior, but also circumstances manifesting extreme indifference to the value of human life—among them:  chambering the gun, holding it nearly against the victim's neck, and pulling the trigger. We hold the evidence is sufficient to support the jury's verdict.

RIGHT TO BE PRESENT

Gonzalez claims the district court's procedure when answering a jury question violated his right to be present at every critical stage of the trial.

18

*Additional Facts*

During deliberations, the jury asked: "Can you provide more clarification of the differences between the murder in the second degree, committed unintentionally and the Involuntary Manslaughter?" There is no discussion in the record about what happened next. There is only the jury's written question and a typed answer signed by the judge, stating:

> "Your question is whether I can provide more clarification of the differences between the murder in the second degree, committed unintentionally and the Involuntary Manslaughter.

> "Please refer to the instructions provided to you."

*Standard of Review*

When the same acts or omissions violated both the defendant's constitutional and statutory rights, an appellate court applies

> "only the more rigorous of the two harmless error standards—the federal constitutional harmless error standard. [Citations omitted.] Under the federal standard, 'error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record.'" *State v. Verser*, 299 Kan. 776, 789, 326 P.3d 1046 (2014).

In other words, this court must conclude "'there is no reasonable possibility that the error contributed to the verdict.'" 299 Kan. at 789.

19

"Four factors assist our evaluation of whether a district judge's communication with the jury outside the presence of the defendant is harmless under the constitutional standard:

'(1) the overall strength of the prosecution's case; (2) whether an objection was lodged; (3) whether the ex parte communication concerned a critical aspect of the trial or rather involved an innocuous and insignificant matter, and the manner in which it was conveyed to the jury; and (4) the ability of a posttrial remedy to mitigate the constitutional error.' [Citation omitted.]" *Verser*, 299 Kan. at 789-90.

*Discussion*

Given the record's silence, we assume the court prepared the response without Gonzalez or his attorney present. See *State v. Betts*, 272 Kan. 369, 391, 33 P.3d 575 (2001), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006). In Kansas, a defendant has a statutory right to be present during discussion of any written jury question unless the defendant waives that right. K.S.A. 2016 Supp. 22-3420(d). Any act or omission violating K.S.A. 2016 Supp. 22-3420(d) also violates K.S.A. 2016 Supp. 22-3405(a), requiring a defendant in a felony case to be present at every stage of the trial, and the "'guarantee of the Sixth Amendment to the United States Constitution that a criminal defendant may be present at every critical stage of his or her trial.'" *Verser*, 299 Kan. at 788.

The State did not cross-petition for review of the panel's determination that Gonzalez' constitutional and statutory rights to be present were violated, so that much is settled. See *State v. McBride*, 307 Kan. 60, 62-63, 405 P.3d 1196 (2017) (only issue on review is whether error was harmless when the State did not cross-petition for review of the Court of Appeals' error determination).

20

Moving to the four factors set out in *Verser*, the panel held, "[T]he State's case against Gonzalez was strong and . . . the evidence was sufficient to support the jury's finding of guilt of unintentional . . . second-degree murder," and therefore concluded "[t]his factor weighs in favor of a finding that the error was harmless." *Gonzalez*, 2016 WL 3202555, at \*10. In his petition for review, Gonzalez challenges this by arguing sufficient evidence is not strong evidence. But as shown above the evidence is strong. Gonzalez pointed the loaded pistol nearly against Levi's neck and voluntarily pulled the trigger, resulting in Levi's death. The panel was correct in holding the State's case was strong. Cf. *Verser*, 299 Kan. at 790 (after discussing the evidence, the court held the State's case against Verser was strong).

The panel held the second factor "may weigh equally" because the record is silent whether there was an objection made at trial. *Gonzalez*, 2016 WL 3202555, at \*10. Gonzalez does not challenge the panel's decision on this factor other than noting it cannot be properly evaluated without a record. We agree with the panel.

For the third factor, the panel stated, "[T]he substance of the jury's question related to a critical aspect of trial," but the court's response was innocuous and insignificant. *Gonzalez*, 2016 WL 3202555, at \*10. It reasoned the trial court's answer had no "substantive information" but merely directed the jury to follow the original instructions. 2016 WL 3202555, at \*10. The panel held this weighed in favor of harmless error. 2016 WL 3202555, at \*10. Gonzalez claims the panel is wrong. He argues this factor is about whether the inquiry's substance, i.e., his state of mind, was a critical aspect of the trial, not whether the information in the answer was innocuous. The caselaw, though, looks to all of the circumstances. For example, the *Verser* court considered whether the information conveyed in answer to the jury's question was innocuous and insignificant and held that because the court's "answer was not substantive at all," the error was

21

harmless. *Verser*, 299 Kan. at 790. In Gonzalez' case, the question concerned an important element of the crime, but the district court's response simply directed the jury back to the instructions already given. We hold the third factor weighs in favor of harmlessness.

As to the fourth factor, the panel noted, "Gonzalez did not pursue any posttrial remedies to correct the district court's presumed procedural error," and determined this factor weighs in favor of harmlessness, citing *State v. Bowen*, 299 Kan. 339, 358, 323 P.3d 853 (2014). 2016 WL 3202555, at *10. But *Bowen* does not support the panel's holding because both Bowen and his counsel knew of the communication but chose not to pursue any posttrial remedies. *Bowen*, 299 Kan. at 358. In Gonzalez' case, there is no record Gonzalez or his counsel knew of the jury's communication with the court. See *State v. Herbel*, 296 Kan. 1101, 1115, 299 P.3d 292 (2013) (Herbel and his counsel's lack of awareness of ex parte communication means failure to seek posttrial remedies cannot be held against him); see also K.S.A. 22-3417 ("[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."). The panel erred in considering the fourth factor. We weigh this factor in Gonzalez' favor. See *Herbel*, 296 Kan. at 1115.

Reviewing the four factors as a whole, the panel's ultimate determination was correct that the error was harmless. The strength of the evidence supporting the jury's verdict and the fact the district court simply referred the jury back to the admittedly correct jury instructions supports holding any lack of presence when composing the response was harmless beyond a reasonable doubt in light of the entire record.

22

Gonzalez next argues the trial court violated his constitutional right to a public trial based on the assumption the trial court responded to the jury question in private, which he bases in turn on the lack of a record it was done in open court. He claims Kansas caselaw makes "it clear that even partial closure implicates the Public Trial Clause," citing *State v. Dixon*, 279 Kan. 563, 599, 112 P.3d 883 (2005) (closure when announcing verdict constituted a Public Trial Clause violation), *disapproved of on other grounds by State v. Wright*, 290 Kan. 194, 224 P.3d 1159 (2010). Gonzalez further insists a criminal defendant's right to a public trial is so fundamental that this amounts to a structural error and requires reversal.

The panel disagreed and held "the right to public trial did not attach to the process of reading, discussing, and responding to the jury question," providing a comprehensive analysis under a "two-part 'experience and logic' test" adopted in *State v. Reed*, 302 Kan. 227, 240-43, 352 P.3d 530 (2015) (courtroom locked to consider a victim's availability to testify). *Gonzalez*, 2016 WL 3202555, at *11-12. Gonzalez fails to take issue with the panel's analysis or present any support for his position that the court's written response violated his right to a public trial. Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority or in the face of contrary authority, is akin to failing to brief an issue. When a party fails to brief an issue, that issue is deemed waived or abandoned. *Mid-Continent Specialists, Inc. v. Capital Homes,* 279 Kan. 178, 191, 106 P.3d 483 (2005).

Under similar circumstances, we have declined to address the public trial question. See, e.g., *Bolze-Sann*, 302 Kan. 198, 218, 352 P.3d 511 (2015) ("We have never characterized a district court's failure to comply with the deliberating jury procedures provided in K.S.A. 22-3420[3] or later statutes as a violation of the constitutional right to

23

a public trial."); *Verser*, 299 Kan. at 790-91 (defendant claimed the jury-answer procedure violated public trial right but did not explain how that procedure implicated that right; the court declined to consider it). We do so again in this case.

JURY QUESTION RESPONSE

As mentioned above, during deliberations the jury requested clarification on how to differentiate unintentional second-degree murder from involuntary manslaughter. In a written response, the court referred the jury to the original instructions. On appeal, Gonzalez argues this failed to provide a meaningful response to the request.

Gonzalez suggests, based on *Robinson,* that "a meaningful answer to the jury's question may have been along the lines of" the following:

> "You must assume that some reckless killings are involuntary manslaughter. You must determine whether a particular reckless killing involves an extreme degree of recklessness or involves a lower degree of recklessness. You do this by determining whether a particular reckless killing indicates an extreme indifference to the value of human life which is beyond that indifference present in all reckless killings. If you have a reasonable doubt between the two offenses, you cannot convict Mr. Gonzalez of unintentional second-degree murder."

*Standard of Review*

"[A] district court's response to a mid-deliberation jury question is reviewed for abuse of discretion." *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014) (citing *State v. Novotny*, 297 Kan. 1174, 1186, 307 P.3d 1278 [2013]; *State v. Wade*, 295 Kan. 916, 920, 287 P.3d 237 [2012]). The abuse of discretion standard is well known:

24

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

When it is necessary to decide if a trial court's response was a correct statement of law, an appellate court is presented with a legal question, which is subject to unlimited review. *Lewis*, 299 Kan. at 856. But when considering whether the trial court erred giving one of multiple legally appropriate responses, the appellate court gives the district court the deference of determining only whether no reasonable person would have given the response adopted by the district court. 299 Kan. at 856.

Upon a finding of error, an appellate court conducts a harmless error analysis under K.S.A. 2016 Supp. 22-3414(3), which states:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is *clearly erroneous*. Opportunity shall be given to make the objections out of the hearing of the jury." (Emphasis added.)

This court has held K.S.A. 22-3414(3) provides a preservation rule for jury instruction claims on appeal and has applied this same rule in the context of a mid-deliberation jury question. *Lewis*, 299 Kan. at 855 (citing *State v. Hoge*, 276 Kan. 801, 817-18, 80 P.3d 52 [2003]). In Gonzalez' case, there was nothing in the record as to whether Gonzalez properly objected to the trial court's answer to the jury question.

25

*Discussion*

During deliberations, when a jury desires to be informed as to any part of the law or evidence arising in the case, the court must "respond to all questions from a deliberating jury in open court or in writing." K.S.A. 2016 Supp. 22-3420(d). The court in Gonzalez' case responded to the jury question in writing by referring it back to the original jury instructions.

In *Wade*, 295 Kan. 916, Syl. ¶ 1, the court held that a trial court has an obligation to respond to a jury's request to be informed on a point of law. In that case, the only dispute involved Wade's state of mind and intent at the time of the victim's killing. Wade claimed the trial court erred by failing to adequately respond to a jury question about the definition of premeditation. The *Wade* court held the district court did not abuse its discretion by "simply directing the jury's attention back to the instructions," which was a permissible way of responding when the instructions already given were correct statements of the law. 295 Kan. at 922-23.

Following *Wade*'s reasoning, the trial court was permitted to refer the jury back to the original instructions, which correctly stated the law. See *State v. Peck*, 237 Kan. 756, Syl. ¶ 6, 703 P.2d 781 (1985) ("When the question has already adequately been covered by the original instructions, the trial court may decline to answer and may direct the jury to re-read the instructions already given."). Instruction No. 11 set forth the elements for the offenses of unintentional second-degree murder and involuntary manslaughter. And the term "recklessly" was defined for the jury, consistent with its statutory definition with one difference—Instruction No. 11 omitted the phrase "circumstances exist" from the statutory definition. That difference is neither challenged by Gonzalez nor did it alter the meaning of reckless in this case. Instruction No. 11 correctly provided the elements of the two offenses at issue.

26

Instruction No. 10 stated that "[w]hen there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only." Moreover, Instruction No. 7 stated that "[e]ach crime charged against the defendant is a separate and distinct offense" and the jury "must decide each charge separately on the evidence and law applicable to it, uninfluenced by [its] decision as to any other charge." The original instructions adequately and correctly stated the applicable law. "This court has long held that appellate courts presume that juries follow the instructions given by district courts." *State v. Sisson*, 302 Kan. 123, 131, 351 P.3d 1235 (2015).

Nor do we find much substantive assistance for the jury from Gonzalez' suggested response in his appellate briefing as quoted above. The jury was correctly tasked by Instruction No. 11 to determine if there was an "extreme indifference to the value of human life." See K.S.A. 2016 Supp. 21-5403(a)(2) (defining unintentional second-degree murder). Otherwise, the original instructions taken as a whole covered the same ground as the suggestion. Instruction No. 11's format communicated to the jury there were two crimes to consider with a distinct additional element for unintentional second-degree murder. See *Robinson*, 261 Kan. at 876-77. The only additional guidance arguably in the suggested language is that it distinguished between the "degree of recklessness" required for the two crimes, but this was also communicated by the fact of the additional element. And Instruction No. 10 told the jury if it had a reasonable doubt between the two offenses, it could only convict Gonzalez of the lesser offense.

We hold the district court did not abuse its discretion by referring the jury back to the given instructions.

## FAILURE TO ISSUE A LIMITING INSTRUCTION

Finally, Gonzalez argues the district court sua sponte should have issued a limiting instruction regarding evidence that was admitted independent of K.S.A. 2016 Supp. 60-455. He contends such an instruction was required by *State v. Santos*, No. 109,456, 2014 WL 3731916 (Kan. App. 2014) (unpublished opinion).

*Additional Facts*

Prior to trial, the State filed a motion seeking admission of other bad acts evidence "to show intent, absence of mistake or accident, and a course of conduct by the defendant." In the motion, the State detailed several prior instances in which Gonzalez had confrontations with others while using a handgun, including his encounter with Syrokos on the night of the shooting. The court denied the motion, ruling the evidence was irrelevant. During trial, the State moved to reconsider a portion of that ruling.

The State insisted Syrokos' testimony was admissible independent of K.S.A. 2016 Supp. 60-455 because his encounter with Gonzalez occurred around the same time as Levi's death. The State noted Syrokos confronted Gonzalez 10 or 15 minutes before the shooting. Gonzalez objected, arguing the evidence was more prejudicial than probative. The district court admitted the testimony because it was relevant to the crime and admissible outside of K.S.A. 2016 Supp. 60-455.

Gonzalez concedes he did not request a limiting instruction. He also does not challenge the district court's ruling that the evidence was admissible independent of K.S.A. 2016 Supp. 60-455 or its rejection of his argument that the evidence was more prejudicial than probative.

28

*Standard of Review*

"For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

*Discussion*

The panel held a limiting instruction was not legally appropriate because the evidence was not admitted under K.S.A. 2015 Supp. 60-455. *Gonzalez*, 2016 WL 3202555, at *15. In doing so, the panel noted that "because the encounter at issue occurred near in time to the charged offenses in this case—aggravated assault and [Levi]'s death—this evidence was admissible independent of K.S.A. 2015 Supp. 60-455." 2016 WL 3202555, at *15 (citing *State v. King*, 297 Kan. 955, 963-64, 305 P.3d 641 (2013) ["K.S.A. 60-455 does not apply if the evidence relates to crimes or civil wrongs committed as part of the events surrounding the crimes for which [the defendant] was on trial—that is, the res gestae of the crime."]).

In *Santos*, the case Gonzalez relies on, the State charged the defendant with "possession of cocaine, DUI, transporting an alcoholic beverage in an open container, failure to stop at a stop sign, and driving without a license." *Santos*, 2014 WL 3731916, at *1. The driving without a license charge was dismissed, and a jury convicted Santos of

29

all remaining charges except for possession of cocaine due to a hung jury. At a second trial on the possession charge, a jury convicted Santos. On appeal, Santos claimed a limiting instruction was appropriate for evidence about the DUI investigation. The *Santos* panel held "a limiting instruction may have been legally appropriate" although "the evidence did not contravene K.S.A. 2013 Supp. 60-455." The panel reasoned, "There is at least a possibility that the jury could have inferred that Santos had the propensity to commit other crimes because he was being investigated for a DUI." 2014 WL 3731916, at *6. The panel ultimately concluded the error was not clearly erroneous. 2014 WL 3731916, at *7.

Gonzalez' reliance on *Santos* is misplaced. Contrary to *Santos*, this court has held when the prior bad acts evidence is not subject to K.S.A. 60-455 a limiting instruction is not legally appropriate and there is no error in failing to give one. *State v. Charles*, 304 Kan. 158, 176, 372 P.3d 1109 (2016), *abrogated on other grounds by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017). The *Charles* court held:

> "'K.S.A. 60-455 does not prohibit the admission of evidence regarding other crimes and civil wrongs if the evidence relates to acts committed as part of the events surrounding the crimes or civil wrongs at issue in the trial.' *State v. King*, 297 Kan. 955, Syl. ¶ 1, 305 P.3d 641 (2013). Northrup's testimony was limited to statements Charles made during his short time inside the video store. The statements were not made on a separate occasion and were not subject to K.S.A. 60-455. See *King*, 297 Kan. at 963-64. A limiting instruction was not legally or factually appropriate, and there was no error in failing to give one. See *State v. Williams*, 299 Kan. 509, 553, 324 P.3d 1078 (2014)." *Charles*, 304 Kan. at 175-76.

The *Gonzalez* panel correctly held the district court did not err in failing to give a limiting instruction because the evidence was admitted independent of K.S.A. 2016 Supp. 60-455.

## CUMULATIVE ERROR

We have assumed one error regarding the jury question conference because the record does not reflect Gonzalez or his counsel were present when the matter was discussed. One error is insufficient to support reversal under the cumulative error doctrine. *State v. Sean*, 306 Kan. 963, 993, 399 P.3d 168 (2017).

Our holdings make it unnecessary to consider the State's pending motion for remand to determine facts surrounding the court's consideration of the jury question. We deny that motion as moot.

Affirmed.