NOT DESIGNATED FOR PUBLICATION

No. 120,378

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIE K. FRANKLIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed February 7, 2020. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE and STANDRIDGE, JJ.

PER CURIAM: Willie K. Franklin was convicted at his jury trial of involuntary manslaughter after the gun he was holding discharged and shot Lei Ala Turner. Franklin now appeals, arguing: (1) the evidence was insufficient to support the jury's finding he acted recklessly; and (2) the prosecutor erred during closing arguments when she referenced a "higher standard" while explaining the standard of care required to find recklessness. Finding no error, we affirm.

1

Franklin was charged with involuntary manslaughter and criminal possession of a firearm. Franklin pled not guilty to both counts and was bound over for trial. At trial, Lakiticia Enclarde and Lariell Oakley testified about events that occurred on December 27, 2017, in Enclarde's apartment. Franklin did not testify in his defense.

The trial testimony reflected on December 27, 2017, Franklin gathered with some of his friends at Enclarde's apartment in Lawrence. Those friends included five people: Enclarde; Franklin; Lei Ala Turner (the victim and Enclarde's sister); Oakley (Enclarde's cousin); and Daylynn Blann (Franklin's friend). They all planned to go to Kansas City later that night.

Franklin brought a gun and a bottle of whiskey to Enclarde's apartment. Shortly after Franklin arrived, he showed the gun to Enclarde and asked her to put the gun away for him. Enclarde put the gun in her bedroom closet. Oakley testified she did not drink, but estimated Franklin, Turner, Blann, and Enclarde together drank "half" to "all" of the bottle of whiskey over several hours. But Enclarde testified they finished the first bottle of whiskey and Franklin went to the store to get another bottle as well as "a thing of mimosa." Blann rolled a marijuana joint and shared it with Oakley and Franklin.

When the group prepared to leave for Kansas City, Franklin asked Enclarde to retrieve his gun. At that point, Oakley, Franklin, Turner, and Blann were all in the kitchen. Oakley testified Enclarde placed the gun on the kitchen table. Enclarde said she put the gun on the table instead of handing it to Franklin because he was talking on the phone. Enclarde then sat down in the living room. According to Oakley, Franklin picked the gun up and pointed it towards her stomach and leg. She asked Franklin to stop and to remove the ammunition. Franklin complied, removing the magazine and chambered bullet and placed them both on the kitchen table. He then pointed the gun in Oakley's

direction and dry-fired it. Oakley testified she saw Franklin load the magazine with the bullet that had been inside the chamber. She then stopped paying attention to Franklin and looked at her phone.

Next, Oakley heard a "loud pop or . . . bang"; but she did not see who fired the gun because she was still on her phone. She turned to see if anyone was hurt and saw Turner holding onto Franklin's shoulders. Oakley spotted blood on Turner's lower back. According to Oakley, Franklin tried to push Turner off of him, and appeared unaware of Turner's injury. Enclarde also heard the noise from the living room. She went into the kitchen and saw Turner holding onto Franklin and saw blood on Turner's shirt. Enclarde testified Franklin still had the gun in his hands and said, "I didn't mean to do this." At some point, Turner collapsed onto the floor. Enclarde called 911, while Oakley meanwhile tried to perform CPR on Turner. Enclarde said Franklin was kneeling on the floor next to Turner and appeared surprised. She yelled at Franklin to get out of her apartment, so Franklin left with Blann and took his gun, the whiskey, and the marijuana with him. Turner died in the ambulance on the way to the hospital. Oakley and Enclarde both testified Franklin was the only person in the apartment who had a gun.

The coroner testified Turner died from a gunshot wound to the chest. From the markings around the wound, the coroner said the bullet first contacted Turner's chest and then exited through her lower back.

The jury convicted Franklin of both charges. The district court sentenced Franklin. On August 27, 2018, Franklin filed a notice of appeal and a motion to appeal out of time. The district court granted his motion, finding Franklin was furnished with an attorney who failed to perfect and complete an appeal. See *State v. Phinney*, 280 Kan. 394, 401-02, 122 P.3d 356 (2005) (a court must allow an appeal out of time if the defendant is furnished with an attorney who failed to perfect and complete an appeal).

3

*The State presented sufficient evidence Franklin acted recklessly.*

On appeal, Franklin concedes he was holding the gun when it fired but argues the evidence was insufficient to support the jury's finding his conduct under the circumstances rose to the level of recklessness.

When the sufficiency of the evidence is challenged on appeal in a criminal case, this court determines whether the evidence, when reviewed in the light most favorable to the State, was sufficient for a rational fact-finder to conclude the defendant was guilty beyond a reasonable doubt. In doing so, this court does not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). It is only in rare cases when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018); *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Here, the State charged Franklin with involuntary manslaughter, which is defined as "the killing of a human being committed . . . [r]ecklessly." K.S.A. 2018 Supp. 21-5405(a)(1). "A reckless killing is one done under circumstances showing a realization of the imminence of danger and a conscious disregard of that danger." *State v. McCullough*, 293 Kan. 970, 977, 270 P.3d 1142 (2012). The district court instructed the jury it had to find the following facts beyond a reasonable doubt in order to convict Franklin of involuntary manslaughter:

1. Franklin killed Turner.
2. The killing was done *recklessly*.
3. The act occurred on or about December 27, 2017, in Douglas County.

Under K.S.A. 2018 Supp. 21-5202(j), "A person acts 'recklessly' or is 'reckless,' when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

When viewed in the light most favorable to the prosecution, the evidence shows:

- Franklin initially gave the gun to Enclarde for her to keep safe;
- Franklin drank whiskey over a period of several hours and smoked a marijuana joint at some point;
- Franklin casually pointed a loaded gun at Oakley;
- Franklin, at the request of Oakley, removed the magazine and bullet from the gun's chamber;
- Franklin later dry-fired the gun in Oakley's direction;
- Oakley testified she saw Franklin reload the single bullet in the gun's magazine;
- Oakley heard a gunshot, then saw Turner bleeding near Franklin;
- The gun was still in Franklin's hands after it had been fired;
- Turner died from the gunshot wound; and
- Franklin was the only person at Enclarde's apartment with a gun.

Viewed in the light most favorable to the State, sufficient evidence supports Franklin's conviction for involuntary manslaughter under K.S.A. 2018 Supp. 21-5405(a)(1).

Our conclusion is supported by several Kansas Supreme Court cases. In *State v. Gonzalez*, 307 Kan. 575, 586-88, 412 P.3d 968 (2018), the court found sufficient

5

evidence supported the defendant's conviction for reckless second-degree murder under similar facts. In *Gonzalez*, the defendant pointed a loaded gun at his friends while intoxicated. His friends asked him to stop. Gonzalez held the gun nearly against his friend's neck when it discharged. At trial, Gonzalez testified he did not know the gun was loaded and did not intend to kill his friend. The court concluded Gonzalez' conduct—chambering a round, holding the gun nearly against the victim's neck, and pulling the trigger—established not only reckless behavior, but also circumstances manifesting extreme indifference to human life. 307 Kan. at 587-88.

In *State v. Deal*, 293 Kan. 872, 882, 269 P.3d 1282 (2012), the defendant confronted the victim. During their argument, the victim tried to hit Deal with a tire iron. Deal wrestled the tire iron away from the victim and, without an intent to kill, struck the victim in his shoulder, neck, and head area. The court held the evidence was sufficient to establish reckless second-degree murder because it showed "a realization of danger and a conscious and unjustifiable disregard of that danger in circumstances manifesting an extreme indifference to the value of human life." 293 Kan. at 885-86.

Similarly here, Oakley and Enclarde's testimony, as well as other evidence, provided sufficient support for the conclusion Franklin acted recklessly. But unlike *Gonzalez* and *Deal*, in this case, Franklin was charged only with involuntary manslaughter, which is a lesser included offense of reckless second-degree murder, so the State did not need to prove the additional element that the reckless killing occurred under circumstances manifesting extreme indifference to the value of human life. See *Gonzalez*, 307 Kan. at 580-81.

The only support Franklin offers for his argument is *State v. Mourning*, 233 Kan. 678, 664 P.2d 857 (1983), which found driving under the influence does not, standing alone, amount to reckless behavior. But as the State correctly points out, proof of an impaired condition, coupled with proof of the realization of the imminence of danger

6

caused by driving while impaired, rises to the level of reckless conduct. See *State v. Jenkins*, 272 Kan. 1366, Syl. ¶ 2, 39 P.3d 47 (2002). Franklin's reliance on *Mourning* is misplaced. The State presented evidence Franklin drank whiskey and smoked marijuana on the night in question. But it did not rely on this evidence, standing alone, to prove Franklin acted recklessly. The State presented evidence Franklin understood the danger his gun could pose: He initially gave it to Enclarde for safekeeping and removed the ammunition when Oakley asked him to. Nonetheless, he consciously disregarded that danger when he pointed a loaded gun at Oakley, then unloaded it and dry-fired the gun in her direction. He also continued to handle and manipulate the gun when he reloaded the bullet back in the magazine just before the incident occurred. With the gun still in his hands after it went off, he said, "I didn't mean to do this."

Here, it appears Franklin is arguing circumstantial evidence cannot, as a matter of law, support a jury's finding of reckless conduct. Franklin claims the "State was not able to produce any evidence . . . of how the gun discharged or what [Franklin] was doing when it discharged." According to Franklin, the gun could have also fired if he had tripped while holding the gun or if he had reloaded it. To a degree, Franklin is right. The State did not prove, with direct evidence, Franklin's actions at the exact moment the gun fired; none of the State's witnesses saw Franklin pull the trigger.

But it is well established a criminal offense can be based entirely on circumstantial evidence. See *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. 304 Kan. at 25. There is no legal distinction between direct and circumstantial evidence in terms of their respective probative value. *State v. Lowery*, 308 Kan. 1183, 1236, 427 P.3d 865 (2018).

7

Clearly, the State presented sufficient circumstantial evidence for the jury to conclude, beyond a reasonable doubt, Franklin, with the gun in his hand, acted recklessly in causing the death of Turner.

*The prosecutor did not err.*

Franklin next argues the prosecutor's reference in closing argument to a "higher standard" was an impermissible misstatement of the standard for recklessness under K.S.A. 2018 Supp. 21-5202(j).

When evaluating a claim of prosecutorial error, this court follows a two-step process: First, this court determines whether an error occurred; and second, if an error has been found, this court evaluates the prejudice it caused to determine whether it was harmless. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). Under the first step, error occurs if the prosecutor's statements "fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109. A defendant establishes error if he or she can show the prosecutor misstated the law or argued a fact or factual inferences with no evidentiary foundation. See *State v. Wilson*, 309 Kan. 67, 78, 431 P.3d 841 (2018).

To understand the prosecutor's statement, we first look at the definition of recklessness. Recklessness requires: (1) the conscious disregard of a substantial and unjustifiable risk and (2) that the disregard in question is a "gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2018 Supp. 21-5202(j). In closing argument, the prosecutor explained the second part of the definition for recklessness: "Now, secondly, this disregard of the substantial and unjustifiable risk is a gross deviation from the standard of care a reasonable person would

8

exercise in this situation. The reasonable person exercising care in a certain situation is something that's used in the law. What would somebody normally do?"

The prosecutor then continued by saying:

> "*You have a higher standard here*. And why is that? Because you're dealing with a gun. . . . Firearms are inherently dangerous. So there is a *higher standard* tha[n] . . . something like coming into the kitchen with a big 'ol bowing [*sic*] knife and sitting [*sic*] it on the table. All right? Guns are much more dangerous, much more volatile, much more easy to have something happen when you're manipulating them." (Emphases added.)

Franklin claims when the prosecutor referenced a "higher standard," she asked the jury to hold him to a higher level of scrutiny than that required for recklessness under K.S.A. 2018 Supp. 21-5405(a)(1).

In support, Franklin relies on *State v. Miser*, No. 99,274, 2009 WL 1691940, at *13 (Kan. App. 2009) (unpublished opinion), where this court analyzed the statute for vehicular homicide—K.S.A. 21-3405 (now K.S.A 2018 Supp. 21-5406)—and noted the district court accurately instructed the jury the test for a material deviation from the standard of care under K.S.A. 21-3405 is judged by what a reasonable person would do under the totality of the circumstances. In that case, Miser, a commercial truck driver, fell asleep at the wheel and rear-ended a vehicle, killing two people and injuring another. Miser was charged with vehicular homicide and aggravated battery. For the vehicular homicide charge, Miser claimed the district court erred when it failed to give his requested jury instruction that a commercial truck driver is not held to a higher standard of care than any other driver. The district court did not include the requested instruction, and instead provided the standard vehicular homicide instruction from PIK Crim. 3d 56.07, which stated in relevant part: "[T]he defendant operated the vehicle in the manner which constituted a material deviation from the standard of care which *a reasonable person would observe under the same circumstances*." (Emphasis added.) This court

9

found the district court did not err when it instructed the jury on the standard of care relevant to vehicular homicide. *Miser*, 2009 WL 1691940, at *13.

Franklin argues *Miser* "implicitly" held that it would have been error for the district court to inform the jury that a commercial truck driver should be held to a higher standard of care and, by implication, this court should find the prosecutor erred when she informed the jury there is a higher standard of care when a gun is involved. But *Miser* is distinguishable. First, *Miser* considered whether the district court erred when it refused to give a requested instruction. Here, there is no question the district court accurately instructed the jury on the standard of care required for a finding of recklessness. Instead, at issue is whether the prosecutor's statements fell "outside the wide latitude afforded prosecutors to conduct the State's case." *Sherman*, 305 Kan. at 109. Second, Franklin's reliance on the prosecutor's reference to a "higher standard" in isolation obscures the overall inference the prosecutor wanted the jury to draw from the evidence.

This court must consider the prosecutor's comments in the context in which they were made rather than in isolation. *State v. Davis*, 306 Kan. 400, 413, 394 P.3d 817 (2017). We also note there was no objection to the prosecutor's closing argument at the time it was presented to the jury. The State asks us to find the prosecutor's statement was not error in context because the prosecutor essentially told the jury that a reasonable person would use more caution with a gun than with another type of weapon, like a "bowing [*sic*] knife." See *Lowery*, 308 Kan. at 1207 (prosecutors can craft arguments on the reasonable inferences to be drawn from the evidence). We find the State's reasoning persuasive.

Recklessness requires a "gross deviation from the standard of care which a reasonable person would exercise *in the situation*." (Emphasis added.) K.S.A. 2018 Supp. 21-5202(j). As the State points out, the definition of recklessness mandates the reasonable person standard is dependent upon the situation at hand. The record shows the

prosecutor's challenged statements merely referred to K.S.A. 2018 Supp. 21-5202(j)'s requirement that the defendant deviated from the standard of care a reasonable person would use *in the situation*. A reasonable person is very careful with a gun and does not point a gun whether loaded or not at another person.

Immediately following the challenged statements, the prosecutor clarified the inference from the evidence she wanted the jury to draw: firearms are inherently dangerous, and therefore, a reasonable person would use greater, or "higher" care handling a gun than when handling a "bowing [*sic*] knife." It is clear from context the prosecutor was not asking the jury to apply a different legal standard than that under K.S.A. 2018 Supp. 21-5202(j). Because the prosecutor did not misstate the law, the statement was not error.

But even if the prosecutor's reference to a "higher standard" misstated the requirement for recklessness, the error would be harmless. Prosecutorial error is harmless if the State can demonstrate "'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *Sherman*, 305 Kan. at 109; see also *State v. Blansett*, 309 Kan. 401, 412, 435 P.3d 1136 (2019).

The prosecutor's reference to a "higher standard" occurred only twice in her closing argument. Before the contested statements, the prosecutor quoted the standard for recklessness almost verbatim from K.S.A. 2018 Supp. 21-5202(j):

> "'A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that certain circumstances exist.'
> "And then, secondly, you have to find that this act by the defendant disregarding that risk must be a gross deviation from the standard of care a reasonable person would use in the situation. . . . Let's go ahead and break it down based on our evidence, okay?"

11

And defense counsel countered the contested statements in closing, stating: "The argument was made there's a higher standard. You received no instruction from the judge that said there's a higher standard. Where did that come from? Right? Your job is to apply the law as instructed by the judge to the facts as you determine them."

The district court appropriately instructed the jury on the reasonable person standard for recklessness under K.S.A. 2018 Supp. 21-5202(j). It also instructed the jury: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." This court presumes jurors follow the instructions they were given. *State v. Mattox*, 305 Kan. 1015, 1027, 390 P.3d 514 (2017).

Finally, the strength of the evidence presented showed Franklin's conduct on the night in question fell well within the standard for recklessness. See *Sherman*, 305 Kan. at 111 ("[T]he strength of the evidence against the defendant may secondarily impact [the prosecutorial-error] analysis."). After drinking whiskey over a period of several hours and smoking some marijuana:

- Franklin casually pointed a loaded gun at Oakley;
- Franklin unloaded the gun upon Oakley's request;
- Franklin dry-fired the gun while pointing it at Oakley;
- Franklin reloaded the magazine with the bullet previously removed from the chamber;
- The gun went off and a bullet hit Turner; and
- After the gun went off, Franklin still had the gun in his hands.

Based on the context in which the prosecutor's statements were made, the isolated occurrence of the statements, the strength of the evidence, and the district court's instruction to the jury that it should disregard any statement by counsel not supported by the evidence, the State met its burden of establishing there is no reasonable possibility the statements contributed to the verdict. See *Sherman*, 305 Kan. at 111.

Affirmed.