NOT DESIGNATED FOR PUBLICATION

No. 118,796

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHERRA STAPLETON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed May 17, 2019. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., PIERRON, J., and MCANANY, S.J.


PER CURIAM: Under K.S.A. 2018 Supp. 60-455(a) "evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." That said, the statute does not apply when the evidence is not evidence of a prior crime or civil wrong. *State v. Gaines*, 260 Kan. 752, 766-67, 926 P.2d 641 (1996), *abrogated on other grounds by State v. Carr*, 300 Kan. 1, 331 P.3d 544 (2014), *rev'd and remanded* 577 U.S. ___, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016).

1

The State charged Sherra Stapleton with burglary for breaking into a vehicle at a casino parking lot. At trial, the court admitted video evidence from a few days before the charged incident. The videos show Stapleton and her codefendant entering and exiting the casino and hovering around a vehicle in the parking lot. Stapleton argues the video evidence was inadmissible under K.S.A. 60-455. But the videos show no crime taking place, nor did the prosecutor refer to any crime taking place in the videos. Instead, the prosecutor used the videos only to help establish the identity of Stapleton and her codefendant.

Stapleton also argues the district court erred by instructing the jurors that they could find her guilty of burglary if she acted knowingly or recklessly. Stapleton is correct that the instruction was erroneous. But she failed to object in the district court and the instruction was not clearly erroneous. So it is not reversible error. Stapleton's final argument is that cumulative error deprived her of a fair trial. But her argument is unpersuasive because this appeal raised only one issue which we find to be error, and it was harmless. As a result, we affirm Stapleton's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

Samuel Randol drove his red Honda Civic to the Prairie Band Casino and Resort (Casino) on May 10, 2016. He parked his car with the windows up and the doors unlocked. After Randol spent some time in the Casino, security told him that he might need to check his car to make sure nothing was missing because someone had been in it. Randol checked and concluded that nothing was missing from his car.

Stapleton and her roommate, Amanda Martinez, were suspects in the burglary because their names had come up in an investigation into a string of burglaries that had been reported at the Casino. Officer Joshua Peters with the Prairie Band Potawatomi Tribal Police Department questioned Stapleton about why she was looking around

2

vehicles in the parking lot. Stapleton admitted she looked into a red Honda but explained that she thought it was stolen because wires were hanging out inside the car.

The State charged Stapleton with burglary, or in the alternative criminal trespass, of the red Honda. The State charged Martinez for the same conduct. The district court consolidated the cases for trial.

In a separate case, the State charged Stapleton with burglary of a black Lincoln at the same location three days earlier. That case was subsequently dismissed because the alleged victim was not willing to appear. Before trial, the State moved to admit video evidence showing Stapleton entering the black Lincoln and attempting to enter a third vehicle on a third date. The State did not charge Stapleton for the latter incident. The videos were both taken in the same location and within a few days of the charged incident. Although the State contended that it sought to admit the videos solely to establish Stapleton's identity, the parties did not request nor did the court give a limiting instruction to the jury. It was the admission at trial of that video and the failure to give a limiting instruction that lies at the heart of Stapleton's first two issues on appeal.

Following the presentation of evidence, the district court provided instructions to the jury. The district court erroneously instructed the jury that burglary could be committed knowingly *or* recklessly. In her third and final issue on appeal, Stapleton argues this was reversible error.

The jury found Stapleton guilty of burglary. It was unable to reach a verdict regarding Martinez' guilt, so the court declared a mistrial in her case. The court sentenced Stapleton to 11 months' imprisonment with a postrelease supervision term of 12 months. Stapleton timely appeals.

On appeal, Stapleton argues (1) the district court erred by admitting videos of alleged burglaries of other vehicles under K.S.A. 60-455, (2) the district court erred by failing to giving a limiting instruction when it admitted K.S.A. 60-455 evidence, (3) the district court incorrectly instructed the jury on the mental state required to be guilty of burglary, and (4) if no single error is reversible, cumulative error deprived her of a fair trial.

THE VIDEO EVIDENCE

Stapleton argues the district court erred by admitting videos that allegedly show Stapleton at the Casino's parking lot "scoping and burglarizing a black Lincoln." Before trial, the court ruled the State could introduce the videos because they were relevant for placing Stapleton at the Casino in the days leading up to the burglary of Randol's red Honda. In addition, it aided in her identification.

*Standard of Review*

Appellate courts review a trial court's decision to admit evidence using a two-step process. First, the appellate court determines whether the evidence is relevant. *State v. Lowery*, 308 Kan. 1183, 1226, 427 P.3d 865 (2018). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b).

Second, if the evidence is relevant the court must determine whether any statutory provisions governing the admission or exclusion of evidence apply. 308 Kan. at 1226. The district court may exclude evidence if "its probative value is substantially outweighed by the risk" of undue prejudice. K.S.A. 60-445; 308 Kan. at 1226.

4

Whether the trial court complied with specific statutory requirements for admitting evidence requires interpretation of a statute. Appellate review is de novo. *State v. Stafford*, 296 Kan. 25, 47, 290 P.3d 562 (2012).

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

To fully analyze this issue and the applicable law, we find it necessary to first review the evidence in some detail as it came in during trial. We note the trial was short, taking about half a day from beginning to verdict.

*We examine the facts related to the videos shown to the jury.*

During its case-in-chief, the State showed the jury the Casino's surveillance video from May 10, which shows two individuals getting into Randol's red Honda and afterwards entering a tan or silver van parked next to the Honda. Stapleton did not object to this video. Her defense was that no witness could identify her as the person entering this particular red Honda.

But the surveillance video the State offered into evidence contained not only the May 10 incident, but video of the burglary of a black Lincoln at the Casino involving two people in a similar van three days earlier, on May 7. This had been the subject of an earlier motion in limine in which the court found that the State could admit the video but could not present any evidence that it portrayed a crime. The State could comment that the two women in the May 7 video appear to be the same women as those in the May 10 video.

5

In introducing the video, the State called Thomas Horan, Director of Surveillance for the Casino. He testified, in response to questions from the State, that he was called to testify about "breaking and entering of a vehicle, a couple vehicles" on May 7, 9, and 10 captured on the Casino's cameras. Stapleton did not lodge a contemporaneous objection to Horan's reference to the video depicting breaking and entering involving more than one vehicle on three different dates. But Stapleton did ultimately renew her objection to admission of the video.

Later, the State called Prairie Band Potawatomi Tribal Police Officer Joshua Charles Peters. He testified that he interviewed Stapleton that night (May 10) about the incident. The prosecutor asked Peters why he had reason to believe that Stapleton was involved. He replied:

> "[Peters:]  We had security footage –or casino security look for connection to a string of burglaries that had been reported, and we found that [she] could possibly be [a suspect] with some of the burglaries.
> . . . .
> "[Prosecutor:]  Okay. What questions did you ask her about this vehicle [the red Honda Civic], and what responses did she give?
> "[Peters:]  I asked her about why she's looking around vehicles and why she got into this vehicle."

Stapleton lodged an objection at this point and moved for a mistrial. She complained that Peters had talked about "a string of burglaries" and several vehicles in violation of the order in limine. The district court judge replied that he would "deal with that in a little bit" and allowed the testimony to proceed. Peters continued by testifying that Stapleton told him that "'she looked into one vehicle, a red Honda, because it had wires all around it, and it appeared stolen.'" Stapleton does not claim on appeal that the judge's failure to declare a mistrial associated with Peters' "string of burglaries" testimony was itself reversible error.

6

At the end of the recross-examination of Peters, the State had not introduced any evidence to associate Stapleton or Martinez with the tan or silver van which the two individuals on the video entered after getting into Randol's vehicle. The district judge stepped in apparently to correct this oversight and asked:

"[Judge:] Officer . . . as part of your investigation, did either of these ladies you identified [referring to Stapleton and Martinez], . . . were you aware of how they had transported themselves to the casino?

"[Peters:] At this time we found out that they were transported there via their personal vehicle. If I recall correctly, it was a silver van.

'[Judge:] All right. And, sir, . . . did you come to any conclusion that the two ladies knew each other?

"[Peters:] Yes."

The district judge then allowed the parties to follow up from his questions. Taking his cue, the prosecutor asked Peters if he had reviewed videos from May 7, May 9, and May 10 and whether those videos all depicted a similar tan or silver minivan. Peters responded they did. Randol had already described the car parked next to his vehicle on May 10, as depicted on the video surveillance, as a tan van. Peters also testified that the videos depicted the same two individuals on all three dates. No contemporaneous objection was lodged to this testimony.

Finally, the State had still not established the Casino was in Jackson County, Kansas. So the district judge again came to the rescue, asking Peters if it was. Peters responded that it was. The State rested, and Stapleton did not put on any evidence.

At this point, the State had not shown the jury any video except the one for May 10 involving Randol's red Honda. But before closing, the prosecutor announced that since the court had admitted the video into evidence, the prosecutor was also going to show the incident from May 7 involving the activity around the black Lincoln during its closing

7

argument. The district judge allowed this over Stapleton's objection. The prosecutor went on to narrate the May 7 video to the jury, referring to the people in the video as the defendants and describing their conduct walking in and out of the Casino.

*The videos to which Stapleton objects depict no crime.*

Under K.S.A. 2018 Supp. 60-455(a) "evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." K.S.A. 2018 Supp. 60-455 generally bars the admission of evidence of a persons' prior crimes or civil wrongs.

But the statute does not apply when the evidence the State is seeking to admit does not show evidence of a crime or civil wrong. See *State v. Sexton*, 256 Kan. 344, 349, 886 P.2d 811(1994). When the evidence is not evidence of a prior crime or civil wrong it is admissible "as long as it was relevant and the trial court did not abuse its discretion in admitting it." *Gaines*, 260 Kan. at 767.

The State argues that the videos played for the jury were not evidence of a crime or civil wrong and K.S.A. 2018 Supp. 60-455 does not apply. We agree. After reviewing the videos dated May 6 and 7, 2016, we find nothing on those videos that show anything that is a crime. The videos from that date are not clear enough to see what, if anything, either defendant did that would constitute a crime.

In the State's closing arguments, the prosecutor played the videos and explained how the jury could use them. The prosecutor's explanation focused solely on using the videos to determine the identity of Stapleton and Martinez and to link them to the van seen in several videos. Nothing in the videos or arguments by the prosecutor surrounding the videos would suggest to the jury that either Stapleton or Martinez were committing a

8

crime. The videos show two people, allegedly Stapleton and Martinez, simply driving or walking on the Casino's property. So we have no trouble concluding that the videos were not K.S.A. 2018 Supp. 60-455 evidence and thus the evidence was admissible "independent of 60-455, as long as it was relevant and the trial court did not abuse its discretion in admitting it." See *Gaines*, 260 Kan. at 767. So we will next examine whether the evidence was otherwise admissible. But first we pause to note that as to Stapleton's second issue regarding the failure to give a limiting instruction, because we have found that the evidence was not K.S.A. 2018 Supp. 60-455 evidence, the court had no duty to give a limiting instruction to the jury.

*The video evidence was relevant and probative.*

The admission of evidence independent of K.S.A. 2018 Supp. 60-455 is entrusted to the sound discretion of the trial court and this court will not overturn the court's decision absent a clear showing of abuse of that discretion. See *Sexton*, 256 Kan. 344, Syl. ¶¶ 1-2.

The evidence was relevant to prove identity. The videos show Stapleton and Martinez walking into the Casino, walking around the Casino floor, leaving the Casino, and walking to the parking lot. It is unclear where they go in the parking lot or even what type of car they get into. In the area Stapleton and Martinez walk to, a van can barely be seen backing out of a parking space and then driving around the parking lot. The video does not show whether it was Stapleton and Martinez that got into the van. The video then depicts someone walking and standing in the vicinity of a black Lincoln and then getting into the van that has now been circling the parking lot. No one testified that this Lincoln was burglarized. Officer Peters is the only one that connects this van to the same one seen on May 10, stating that these two vans were similar and the individuals involved on both dates were the same individuals. The jury could compare those videos with the

9

videos from May 10 and to the in-court identifications of Stapleton and Martinez to help identify who was getting into Randol's red Honda Civic.

But given the low video quality and the intervening days, the probative value of the videos was low. Likewise, any potential prejudice was low. The only person to admit looking into a red Honda the evening of May 10 was Stapleton. The State connected Stapleton to the van parked next to the red Honda through the videos and the testimony of Officer Peters. The May 10 video shows the person the State has identified through circumstantial evidence as Stapleton looking around in a furtive manner and getting into the red Honda.

For these reasons, it was not unreasonable for the district court to admit the videos for identification purposes and find that the prejudicial effect did not outweigh the probative value for identification purposes. So the district court did not abuse its discretion.

### THE JURY INSTRUCTION

Stapleton next argues the district court erred by instructing the jury that burglary could be committed knowingly or recklessly. Stapleton acknowledges that she did not object to the jury instruction at trial.

> "When analyzing jury instruction issues, we follow a three-step process:
> '(1) determining whether the appellate court can or should review the issue, *i.e.*, whether
> there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;
> (2) considering the merits of the claim to determine whether error occurred below; and
> (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed
> harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 307 Kan. at 317; see K.S.A. 2018 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

*The district court erred by instructing the jury the State only had to prove Stapleton committed a burglary knowingly or recklessly.*

We turn first to the instructions given.

Burglary is statutorily defined as "without authority, entering into or remaining within any: . . . (3) vehicle . . . with *intent* to commit a felony, theft or sexually motivated crime therein." (Emphasis added.) K.S.A. 2018 Supp. 21-5807(a)(3). Jury instruction No. 8 correctly stated:

"The defendants are charged with burglary. The defendants plead not guilty.
"To establish this charge, each of the following claims must be proved:

"1. The defendants entered a red Honda Civic automobile belonging to Samuel L.
     Randol.
"2. The defendants did so without authority.
"3. The defendants did so with the *intent* to commit a theft therein.
"4. This act occurred on our about the 10th day of May, 2016, in Jackson County,
     Kansas." (Emphasis added.)

But here the court also instructed the jury:

"The State must prove that the defendants committed the crimes of Burglary or Criminal Trespass:

- "Intentionally, or
- "*Knowingly*, or
- "*Recklessly*.

"A defendant acts intentionally when it is the defendant's desire or conscious objective to:

- "Do the act complained about by the State, or
- "Cause the result complained about by the State.

"A defendant acts *knowingly* when the defendant is aware:

- "Of the nature of her conduct that the State complains about, or
- "Of the circumstances in which she was acting, or
- "That her conduct was reasonably certain to cause the result complained about by the State.

"A defendant acts *recklessly* when the defendant is aware:

- "Certain circumstances exist, or
- "A result of the defendant's actions will follow.

"This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation." (Emphases added.)

This court recently addressed the same issue in *State v. Bowser*, No. 117,952, 2018 WL 4517043 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* October 22, 2018, when the court held that including an instruction that aggravated burglary could be completed knowingly was error. In *Bowser*, the State charged the defendant, in part, with

12

aggravated burglary. The court provided inconsistent jury instructions to the jury. First, the court instructed the jury that the State must prove Bowser entered or remained in a building without authority "'with the intent to commit Aggravated Robbery therein.'" 2018 WL 4517043, at *5. Then the court instructed the jury the State "'must prove that the defendant Charles Bowser committed the crime of Aggravated Burglary, knowingly.'" 2018 WL 4517043, at *5.

This court held that aggravated burglary requires the defendant to intend to commit a felony, theft, or sexually motivated crime. An instruction to the jury that the State was required to prove Bowser committed the crime of aggravated burglary knowingly was an incorrect statement of law. 2018 WL 4517043, at *6.

The facts here are essentially the same as in *Bowser*. Both courts instructed the jury, in a broad instruction, the State had to prove the defendant committed a burglary with a culpable mental state lower than intentionally. See *Bowser*, 2018 WL 4517043, at *5. But in the more specific instruction the court told the jury that the defendant can only be guilty of burglary if the defendant had the intent to commit a felony, theft, or sexually motivated crime therein. See 2018 WL 4517043, at *5. The district court erred by instructing the jury the State only had to prove Stapleton committed a burglary knowingly or recklessly. This court's next task is to determine whether the error was harmless.

*Because Stapleton failed to object to the erroneous jury instruction, we use the clear error rule to determine if the error requires reversal.*

The parties disagree on the proper framework for determining whether the error was harmless. Stapleton argues that because the instruction "diluted the burden of proof on an essential element of the offense" the constitutional harmless error test applies. But the State argues that this court reviews the error for clear error. We agree with the State.

13

First, the Kansas statute is clear. No error can be assigned to the giving or failure to give an instruction unless a party objects outlining the reason for the objection "unless the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 2018 Supp. 22-3414(3). This is true even if the error implicates a constitutional right. See *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016) (finding a different test than the constitutional error test applies if no objection made); *State v. Stuteville*, No. 117,106, 2018 WL 2271416, at *4 (Kan. App.) (unpublished opinion) (holding that even when there is a constitutional violation, "'[a] party cannot claim instructional error unless he or she either objects to the error or the error is determined to be clearly erroneous'"), *rev. denied* 309 Kan. ___ (December 19, 2018).

Here, the district court improperly instructed the jury with a lower burden of proof in a general instruction. Stapleton did not object to the erroneous instruction. Accordingly, the court's error is reversible only if the failure was clearly erroneous. *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). The "clearly erroneous" principle is not a standard of review, i.e., a framework for determining whether error occurred. Instead, it supplies a basis for determining if an error requires reversal of a conviction. See *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). To establish clear error the defendant must firmly convince the court "that the jury would have reached a different verdict without the error." *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

When determining whether there was clear error, appellate courts consider "'jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have mislead the jury.'" *Butler*, 307 Kan. at 843.

Stapleton fails to firmly convince us that the jury would have reached a different verdict without the error. The jury instructions did correctly instruct the jury that to find

14

Stapleton guilty of burglary the State must prove Stapleton entered Randol's vehicle "with the intent to commit a theft therein." In his closing argument, the prosecutor focused the jurors on the specific burglary instruction. The prosecutor even acknowledged the real issue facing the jury was "[w]hat were [Stapleton and Martinez] intending to do?" The prosecutor continued to reiterate to the jury that it needed to determine whether Stapleton entered Randol's vehicle with the intent to commit a theft. Martinez' attorney also discussed intent.

Stapleton's argument that the jury could have believed she entered Randol's car "with some other intent, but still consciously disregarding the risk of a theft could occur under such circumstances" is unpersuasive. Her argument requires this court to find the jury thought Stapleton intended to enter the car for some reason other than to commit a theft but did so in a way where she knowingly or recklessly *could have* committed a theft. It is not reasonable to conclude that the jury could have reached that conclusion after considering the jury instructions as a whole.

When considering the jury instructions as a whole, coupled with counsel's arguments and focus on intent, Stapleton fails to firmly convince us that the result of the trial would have been different had the error not occurred.

## CUMULATIVE ERROR

Stapleton's final argument on appeal is that even if a single error does not require reversal, the cumulative effect of the errors deprived her of a fair trial.

A single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018). Because we have found that there was only a single error and that error was ultimately harmless, reversal is not warranted under the cumulative error doctrine.

15

Affirmed.